STATE OF NORTH CAROLINA EX REL UTILITIES COMMISSION AND RUFUS
    L. EDMISTEN, ATTORNEY GENERAL v. PUBLIC SERVICE COMPANY
    OF NORTH CAROLINA, INC.

No. 7710UC83

(Filed 7 February 1978)

1. **Gas § 1— natural gas company—volume variation adjustment factor—notice of
    hearing**

    A natural gas company was on notice that its volume variation adjust-
    ment factor was the subject of a hearing before the Utilities Commission and
    cannot complain of lack of notice that the Commission might require a calcula-
    tion less favorable than the one sought by the company.

2. **Gas § 1; Utilities Commission § 6— natural gas—volume variation adjustment
    factor—true-up adjustment**

    There was competent, material and substantial evidence in the record to
    support an order of the Utilities Commission basing the volume variation ad-
    justment factor for the rates of a natural gas company on both historical and
    future entitlement periods and requiring a true-up adjustment for past periods
    based upon the difference between the volume variation adjustment factor ac-
    tually in effect and the true factor determined by using the actual curtailment
    of gas supplies for the past periods.

3. **Gas § 1; Utilities Commission § 6— natural gas—volume variation adjustment
    factor—order for refunds**

    The Utilities Commission acted within its authority and did not engage in
    retroactive rate making when it ordered a natural gas company to refund the
    difference between a proposed volume variation adjustment factor collected
    pursuant to an undertaking for refund and the factor thereafter approved by
    the Commission, or when it required the company to refund the difference be-
    tween the volume variation adjustment factor actually in effect for past
    periods and the "true" factor for such periods based upon actual curtailment
    experience during those periods.

APPEAL by defendant from an order of the North Carolina
Utilities Commission issued 22 September 1976 in Docket No. G-5,
Sub 102C. Heard in the Court of Appeals 15 November 1977.

Pursuant to a general rate case in Docket No. G-5, Sub 102,
the Utilities Commission (Commission) entered its Order
Establishing Rates for Public Service Company of North Carolina,
Inc. (Public Service or Appellant), on 13 February 1975. Contained
within this order as part of the approved rate structure was
authorization for the use of a formula known as the Volume Varia-
tion Adjustment Factor (VVAF). The VVAF is a rate set for the

future and is based on projected volumes of gas. Its use was necessitated by the curtailment of natural gas supplies flowing to North Carolina distributors, including Public Service, from Transcontinental Gas Pipeline Corporation (Transco). Curtailment levels had fluctuated from month to month and from season to season, making it impossible to accurately forecast future revenues and expenses for Public Service. The VVAF was designed to track the revenue effects of increased or decreased curtailment and to maintain a base period "margin" or difference between gross revenues and cost of purchased gas, thereby avoiding the necessity for a general rate case each time curtailment levels might change. The order of 13 February 1975 provided for the filing of future rate schedules and revisions every six months to reflect further changes in curtailment levels.

Evidence before the Commission in the instant proceeding reveals that Public Service initially filed its VVAF on 19 February 1975 at a rate of $.1338 per mcf. Effective 6 October 1975, Public Service reduced its VVAF increment to $.0842 per mcf to adjust for overcollections due to increased supplies. On 20 May 1976, Public Service proposed a third VVAF filing, reducing the increment to $.0770 per mcf. A revision to this third filing was filed on 8 June 1976, increasing the VVAF to $.2835 per mcf. By letter dated 14 June 1976, the Commission authorized the increase reflected in the third (revised) VVAF filing.

The testimony of C. M. Dickey, Vice President of Gas Supply Services for Public Service, indicates the reason for the difference in the 20 May and 8 June VVAF filings. The 20 May filing reflected a curtailment forecast based upon 5½ months actual or historical supply volumes (1 November 1975 through 15 April 1976), and 6½ months of estimated future supplies (16 April through 31 October 1976). This method of forecasting curtailment was based upon paragraph 6 of the Commission's order issued 8 April 1976 in Docket No. G-5, Subs 102, 112, 113 and 114. After a conference between Public Service, the Commission Staff, and another of the utilities, the 8 June revised filing was submitted. In this revised filing the VVAF was calculated on the basis of supply levels obtained by annualizing the upcoming summer period curtailment level. This method of forecasting curtailment was consistent with Public Service's assumption as to the Commission's interpretation of the above paragraph 6.

On 24 June 1976, the Attorney General of North Carolina gave notice of intervention on behalf of the using and consuming public, and filed a motion to rescind approval of the rate increases and set the matter for hearing. By order dated 25 June 1976, the Commission recognized the Attorney General's intervention; by order dated 29 June 1976, the Commission concluded that its approval of the VVAF increase should be rescinded and the matter set for hearing, and concluded that the proceeding was not a general rate case. The Commission ordered the suspension of the proposed rate schedules and the refund of any amounts collected thereunder; providing, however, for a stay of its order of suspension and refund pending a hearing, should Public Service file an undertaking to refund any amounts later found to be unjust and unreasonable. Public Service filed such an undertaking on 2 July 1976.

The matter came on for hearing before the Commission on 20 July 1976, at which time the parties presented evidence. In its order issued 22 September 1976, the Commission made findings of fact, and concluded, *inter alia*, "that the use of both historical and future Transco entitlement periods provides the best estimate of volumes at the time of filing and should serve as the basis for the VVAF calculation . . . ." The Commission further concluded "that the amounts heretofore collected by Public Service under the $.2835 per mcf VVAF rate, to the extent they exceed such amounts as would have been collected by Public Service had the VVAF been calculated in accordance with Appendix A to this Order, are unjust and unreasonable and should be refunded pursuant to Public Service's Undertaking filed with the Commission." Finally, the Commission concluded "that the adjustments to the VVAF approved herein are just and reasonable."

Based upon its findings and conclusions, the Commission denied Public Service's application to increase the VVAF to $.2835 per mcf, and ordered Public Service to file revised tariffs in accord with the aforementioned Appendix A.

Appendix A first required the use of the 5½ months historical/6½ months estimated future volumes for purposes of calculating the VVAF rate to be effective 18 June 1976 (as per the 20 May filing). Also, it required that Public Service calculate the "true" VVAF rate based upon actual curtailment for the period 20 February 1975 through 19 February 1976, and make an

adjustment for the period based upon the difference between the VVAF rate actually in effect and the pro forma "true" VVAF rate. A "true" VVAF calculation was also required for the period 16 April 1975 through 15 April 1976 in order to adjust for the period 20 February 1976 through 15 April 1976. A final adjustment was required for the period 16 April 1976 through 18 June 1976 due to lag time in implementing rates.

Appendix A further required that the difference between the $.2835 rate subject to undertaking, and the new rate (to be calculated using historical and projected future curtailments) be flowed back to the customers who paid the $.2835 rate by credits to their bills, or by refund check. Over-collections reflected by the various adjustments were also to be refunded by credit or check.

Public Service Company appealed.

*Boyce, Mitchell, Burns & Smith, by F. Kent Burns, for appellant Public Service Company of North Carolina, Inc.*

*Commission Attorney Edward B. Hipp and Associate Commission Attorney Antoinette R. Wike, for the North Carolina Utilities Commission.*

*Attorney General Edmisten, by Associate Attorney Jerry B. Fruitt and Assistant Attorney General Jessie C. Brake, intervenors.*

BROCK, Chief Judge.

[1] By its first assignment of error, appellant contends that the Commission erred in adopting and ordering the implementation of Appendix A without affording Public Service an opportunity to be heard, in that the hearing and the evidence related only to the 8 June filing, and the procedures mandated by Appendix A were not presented in any way at the hearing. We find no merit in this contention.

Public Service was clearly on notice that the Commission's approval of the 8 June filing had been rescinded and that the VVAF would be the subject of the 20 July hearing. Public Service was on notice that it would have to justify its proposed VVAF calculation and cannot be heard to complain of lack of notice that the Commission might require a calculation less favorable than the one sought. It is worthy of note that the historical/future cur-

tailment forecasting method required by Appendix A is the same as that utilized by Public Service in its 20 May filing, and that mandated by the 8 April 1976 order in Docket No. G-5, Subs 102, 112, 113 and 114, which was made part of the record in this proceeding.

As to the true-up adjustments in Appendix A, the record reveals that even the 8 June filing contained a true-up component and Public Service cannot challenge these provisions on the grounds of lack of notice and opportunity to be heard.

Appellant's assignment of error No. 1 is overruled.

[2]   In its second assignment of error, Public Service argues that there is no competent, material or substantial evidence to support the adoption of Appendix A, since all of the evidence supported the 8 June filing. We disagree.

We perceive this case as little more than a dispute over accounting procedures, insofar as it relates to the calculation of the VVAF and the true-ups. Considering the entire record as submitted, G.S. 62-94(b)(5), we find, as noted *supra*, that the historical/future curtailment forecasting method was mandated by the 8 April Commission order, and was proposed by Public Service in its 20 May filing. These facts constitute competent, material and substantial evidence to support the Commission's order requiring computation of the VVAF in the prescribed manner. As to the true-up provisions of Appendix A, again, the method of calculation of the adjustments are virtually identical to those contained in the 20 May filings, and even the 8 June filing contained a true-up component. The Commission's order is, by statute, deemed *prima facie* just and reasonable. G.S. 62-94(e). Public Service has failed to carry its burden of proving otherwise with respect to the procedures for determining the VVAF and the true-up adjustments mandated by Appendix A.

Appellant's assignment of error No. 2 is overruled.

[3]   Public Service argues, in its third assignment of error, that the refund provisions of Appendix A exceeded the authority of the Commission and constituted retroactive rate making. Public Service contends that the VVAF is an existing rate established by the Commission, which can only be changed prospectively, whereas the refund provisions of Appendix A require refunds

back to 20 February 1975. Appellant's argument thus is premised upon the assumption that the VVAF is itself an established rate. Clearly, retroactive changes in existing rates by the Commission are not allowed. However, we do not agree with appellant's assumption regarding the nature of the VVAF.

On 2 July 1976, Public Service filed its undertaking to refund to its customers who paid them, the excess of payments charged at the $.2835 VVAF over amounts which the Commission might approve. We have determined *supra* that the Commission did not err in its order relating to the calculation of the VVAF; therefore Public Service is bound by its undertaking, and the Commission had authority to order a refund. The $.2835 VVAF collected by Public Service pending the outcome of this proceeding was in the nature of a "permitted or allowed" rate as discussed by Justice Exum in *Utilities Commission v. Edmisten, Attorney General*, 291 N.C. 327, 352, 230 S.E. 2d 651, 666 (1976), which is subject to refund upon determination by the Commission that it is unjust and unreasonable. G.S. 62-132. The Commission determined that the $.2835 VVAF was unjust and unreasonable to the extent it exceeded the VVAF as calculated in accordance with Appendix A.

Appellant's exceptions to the order requiring true-up adjustments and refunds dating back to 20 February 1975 appears aimed at the requirement of specific refunds rather than at the authority of the Commission to require a true-up. The Intervenors, in their brief, assert that the VVAF tariff contains a provision for true-ups. The VVAF tariff is not part of the record in this case. However, as evidenced by the testimony of witnesses Dickey and Flanagan, Public Service recognizes the necessity of true-ups to account for over-collections which resulted when curtailment levels actually experienced turned out to be lower than projected at the time the VVAF was previously calculated. Public Service proposed to true-up by means of an offset to the new VVAF. As established at the hearing, under this proposal, only those who remained customers of Public Service would receive any refund for over-collections. The Commission's order requires that customers who are no longer served by Public Service, and cannot benefit from the offset to the VVAF, but who paid the overcollections from 20 February 1975, are to receive specific refunds by check.

The "true" VVAF rate is based upon *actual* curtailment experience. The "true" VVAF is the incremental rate necessary to allow Public Service to maintain its base period margin. Since the VVAF actually charged is based upon projected curtailment levels, it must be trued-up periodically to reconcile it with actual experience. Public Service does not challenge the authority of the Commission to require a true-up, and we believe that the VVAF true-up and refund provisions are distinguishable from the retrospective and prospective rate making condemned in *Utilities Commission v. Edmisten, Attorney General,* 291 N.C. 451, 232 S.E. 2d 184 (1977). We construe the *pro forma* "true" VVAF as the just and reasonable rate set by the Commission which enables Public Service to maintain its base-period margin. The estimated VVAF is more akin to the "permitted or allowed" rates mentioned *supra.*

Public Service excepts to the Commission's conclusion that the VVAF has never been subject to an absolute true-up. There is nothing in the record or appellant's brief to indicate that the Commission's conclusion was erroneous. Without some such showing by appellant, we cannot find error in this finding by the Commission.

Appellant's assignment of error No. 3 is overruled.

By its fourth assignment of error, Public Service argues that Appendix A is arbitrary and capricious on its face because it requires overlapping true rate calculations. This argument is meritless. Appendix A does indeed order the calculation of overlapping true rates, one for the period 20 February 1975 through 19 February 1976, and another for the period 16 April 1975 through 15 April 1976. However, the adjustments are applied to separate periods for purposes of determining over-collections (the latter true rate being applied only to the period 20 February 1976 through 15 April 1976). We find nothing arbitrary and capricious about this aspect of Appendix A. This assignment of error is overruled.

The decision of the North Carolina Utilities Commission is

Affirmed.

Judges MARTIN and CLARK concur.