STATE OF NORTH CAROLINA ex rel. UTILITIES COMMISSION, NORTH CAROLINA NATURAL GAS, Applicant, and THE PUBLIC STAFF, Intervenor v. CF INDUSTRIES, INC., Intervenor

No. 16

(Filed 5 March 1980)

**Gas § 1; Utilities Commission § 24— curtailment tracking rate—undercollection for one year as offset to overcollection for next year—no retroactive rate making**

An annual "true up" of the curtailment tracking rate of a natural gas company was not a change in a general fixed rate, and an order permitting an undercollection produced in one year by a curtailment tracking rate based on an incorrect base period margin to be rolled forward to offset an overcollection in the next year did not constitute prohibited retroactive rate making.

Justice CARLTON did not participate in the consideration or decision of this case.

ON appeal by defendant from an opinion of the Court of Appeals reported at 43 N.C. App. 219, 258 S.E. 2d 389 (1979) with one judge dissenting, affirming an order of the North Carolina Utilities Commission entered 4 April 1978.

On January 13, 1978 North Carolina Natural Gas (NCNG) filed an application in Docket No. G-21 Sub 128D for an adjustment and "true up" of its Curtailment Tracking Rate (CTR), based on forecasted gas supply for the period November 1, 1977 through October 31, 1978. This CTR had initially been put into effect as part of NCNG's rate structure by order of the North Carolina

Utilities Commission (Commission) on January 21, 1975, based on NCNG's fiscal year ending September 30, 1974.

NCNG is a distributor of natural gas, and receives 100% of the natural gas it has for sale from its pipeline supplier, Transcontinental Gas Pipeline Corporation (Transco). In 1974 and 1975 the volumes of natural gas available to NCNG fluctuated widely, and on the whole were declining rapidly. As a result of this declining availability of gas, the Commission instituted the CTR to enable NCNG to raise and lower its rates based on the volume of gas received, without perpetually appearing before the Commission requesting general rate adjustments.

The CTR is a surcharge on all volumes of natural gas sold by NCNG, which allows NCNG to raise or lower the price of gas per volumetric unit to maintain the "Base Period Margin." This "Margin" is computed as the difference between gross revenues derived from gas sales, and the total cost of procuring the natural gas during the base period. NCNG's original CTR was computed based on an erroneous calculation of its "Base Period Margin." The company initially used a figure of $10,232,649 which it mistakenly calculated as the actual margin for the base year ending 30 September 1974. The figure of $10,232,649 was adopted by the Commission in its order establishing general rates for NCNG on 12 December 1974. On 22 September 1976, upon discovery of the miscalculation, the Commission adjusted this figure to establish a new "Base Period Margin" of $11,549,778.

As a result of the CTR, when the volume of gas received by NCNG declines, and because of this decline the gross revenues received by NCNG also decrease, the CTR is increased to enable NCNG to maintain the "Base Period Margin." As the volume of gas obtained by NCNG increases, and so do its gross revenues, the CTR surcharge decreases also to maintain this "Margin." The CTR allows NCNG to maintain its "Base Period Margin" in spite of fluctuations in the volume of gas made available to it for sale. The CTR does not track revenues of NCNG for it does not vary with the other expenses of the company. Its sole purpose is to maintain the "Margin" in spite of fluctuating gas supplies.

The CTR is computed on an annual basis based on projected volumes at the start of each yearly period. At the end of the yearly period when the actual volume figures are available, the Com-

mission requires NCNG to "true up" its projected CTR, either by refunding monies overcharged or recouping for undercharges. Establishing a new CTR for the period November 1, 1977 through October 31, 1978 and the "true up" for the period commencing 1 November 1976 and ending 31 October 1977 were the subjects of the January 13, 1978 hearing before the Commission. That "true up" is also the subject of this appeal.

In "trueing up" the projected CTR for the year beginning 1 November 1976, and ending 31 October 1977, it was determined NCNG had overcollected from its customers, including CF Industries, Inc. (CFI) in the amount of $625,586. However, the Commission also determined that in the preceding twelve month period ending 31 October 1976, NCNG had undercollected in the amount of $518,610 due to the miscalculation of its "Base Period Margin." As noted above, the incorrect "Margin" was adjusted upward by the Commission on 22 September 1976. The Commission therefore determined by offsetting this undercollection for the yearly period ending 31 October 1976 against the $625,586 overcollection for the yearly period ending 31 October 1977, that the actual amount of overcollection for the period November 1, 1976 through October 31, 1977 was $106,967. The Commission on 4 April 1978 ordered that this amount (plus an additional amount of $208,413 due to an adjustment for billing under the Transportation Rate, but not an issue in this appeal) be flowed through to NCNG customers.

NCNG complied with this order, distributing monies to customers on a pro rata basis by giving cash refunds to customers no longer requiring service, and by crediting the accounts of those still served by NCNG. From the Commission's order allowing the $625,586 overcollection to be offset by the prior $518,610 undercollection, CFI appealed. The Court of Appeals affirmed the Commission at 43 N.C. App. 219, 258 S.E. 2d 389 (1979). Judge Martin (Robert M.) dissented without assigning a reason therefor. Pursuant to G.S. 7A-30(2) defendant appealed to this Court as a matter of right.

*Jerry B. Fruitt, Chief Counsel, by Robert F. Page, Public Staff Attorney, for the North Carolina Utilities Commission, appellee.*

*McCoy, Weaver, Wiggins, Cleveland and Raper, by Donald W. McCoy, for North Carolina Natural Gas Corporation, appellee.*

*Sanford, Adams, McCullough and Beard, by William H. Mc-Cullough, Charles C. Meeker and Peter J. Sarda, for CF Industries, Inc., appellant.*

BROCK, Justice.

The question presented by this appeal is whether or not the Commission may allow an undercollection of $518,610 accrued by NCNG during the year prior to October 31, 1976 to be rolled forward to offset an overcollection of $625,586 during the following annual period ending October 31, 1977; and thereby create a net cash refund to NCNG customers in the amount of only $106,976. For the reasons which follow we hold that the decision of the Commission to allow a roll in of the past undercollection was proper.

Appellant argues to this Court that a CTR undercollection must be treated like any other utility undercollection, and may not be collected from customers of that utility in a subsequent period. In the area of general rate making, it is settled law in this jurisdiction that the Commission has no authority to allow a public utility to increase the rates of its present customers to collect a past deficit. *Utilities Commission v. Edmisten,* 291 N.C. 451, 232 S.E. 2d 184 (1977); *Utilities Commission v. City of Durham,* 282 N.C. 308, 318, 193 S.E. 2d 95, 102 (1972). Justice Lake speaking for the Court in *Edmisten* noted the rationale behind this rule.

> "Such rate making throws the burden of such past expense upon different customers who use the service for different purposes than did the customers for whose service the expense was incurred." *Id.* at 470, 232 S.E. 2d at 195.

We have concluded, however, that a rate adjustment pursuant to an annual CTR "true up" is not a change in a fixed general rate, and thus the rate adjustment in this case which allowed NCNG to offset its overcollection by its previous undercollection does not

constitute retroactive rate making prohibited by *Utilities Commission v. Edmisten*, 291 N.C. 451, 232 S.E. 2d 184 (1977).

The CTR was established as part of NCNG's basic rate structure by order of the Commission on 12 December 1974, and was implemented at a time of uncertainty of the continuing availability of gas supplies. The CTR's purpose was to prevent NCNG and its customers from making continued appearances before the Commission to request general rate adjustments with each increase and decrease of natural gas supplies. The adjustments would have been necessary to maintain the same "Base Period Margin" approved by the Commission. The CTR eliminates the need for such procedure by allowing NCNG to base its price per volumetric unit on projected volumes of gas which it might receive over a yearly period. At the end of the yearly period when the *actual* amount of gas received during that period is known, the rate is "trued up" to reconcile the rate charged with the amount of gas received. This "true up" efficiently maintains the NCNG "Base Period Margin" approved by the Commission at the general rate hearing of 12 December 1974. In *Utilities Commission v. Public Service Company*, 35 N.C. App. 156, 241 S.E. 2d 79 (1978) our Court of Appeals upheld the use of a formula known as the Volume Variation Adjustment Factor (VVAF), which provided for the yearly "true up" of projected volumes of natural gas in a manner identical to that of the CTR. In distinguishing this "true up" from prohibited retroactive rate making in a general rate case, the Court of Appeals noted:

> "The 'true' VVAF rate is based on *actual* curtailment experience. The 'true' VVAF is the incremental rate necessary to allow Public Service to maintain its base period margin. Since the VVAF actually charged is based upon projected curtailment levels, it must be trued-up periodically to reconcile it with actual experience." *Id.* at 162, 241 S.E. 2d at 83.

Also in the case at bar, prior to the annual "true up" of the CTR, NCNG cannot know the actual rate which must be charged in order to maintain its approved "Base Period Margin." Until the annual "true up," no firm rate has been "fix[ed], established or allow[ed]" for the preceding year as required by G.S. 62-130, and thus without the "true up" there is no general rate established for that year. The CTR merely creates an *estimated rate* based

on projected gas availability. It is a system designed by the Commission to enable NCNG to maintain its general rate previously set by the Commission in September of 1974, without the necessity of a general rate hearing with each fluctuation in the availability of natural gas. Therefore like the "true up" of the VVAF, the "true up" of the CTR is a correction of an estimated rate, and does not constitute retroactive general rate making.

We also note that in the case of an approved general rate, "a utility may not properly be denied the right to charge such a rate, for the present use of its service, for the reason that, . . . the utility earned an excessive rate of return due to the fact that an expense which it was expected to incur . . . [in a previous period] did not materialize." *Utilities Commission v. Edmisten*, 291 N.C. 451, 469-70, 232 S.E. 2d 184, 194 (1977). Such is not the case with excess rates collected pursuant to the CTR. As in the case *sub judice* if the rate charged by NCNG during the annual period, prior to the "true up," exceeds the rate necessary for NCNG to maintain its "Base Period Margin," the NCNG is required by the Commission to refund the excess.

We therefore conclude that the CTR is not a general fixed rate, and that rolling forward NCNG's past undercollection does not constitute prohibited retroactive rate making. If pursuant to the CTR, NCNG is required to refund the excess revenues collected during the year ending October 31, 1977, then it is entitled to reduce the amount of this refund by its undercollection due to an error in computing its "Base Period Margin" during the year ending October 31, 1976.

The decision of the Court of Appeals affirming the Commission's order that NCNG refund the amount of $315,389 is affirmed.

Affirmed.

Justice CARLTON did not participate in the consideration or decision of this case.