STATE OF NORTH CAROLINA EX REL. UTILITIES COMMISSION; CAROLINA POWER AND LIGHT COMPANY (APPLICANT); CHAMPION INTERNATIONAL CORPORATION; AND RUFUS L. EDMISTEN, ATTORNEY GENERAL V. THE PUBLIC STAFF—NORTH CAROLINA UTILITIES COMMISSION; AND NORTH CAROLINA TEXTILE MANUFACTURERS ASSOCIATION, INC.

No. 8110UC392

(Filed 3 August 1982)

1. **Utilities Commission § 24— fuel adjustment proceedings not consolidated with general rate case in progress—no error**

   The Utilities Commission properly considered an application for a fuel cost-based adjustment in a separate G.S. § 62-134(e) proceeding, rather than consolidating that application with the then-pending general rate case. The application for a fuel cost-based adjustment was entitled to the expedited consideration of a G.S. § 62-134(e) proceeding, and even if the adjusted rate ordered in the proceeding was eventually superseded by the reasonable rates established in the then-pending general rate hearing, it would be of valid force until so superseded. G.S. 62-133.

2. **Utilities Commission § 24— consideration of total fuel cost for electricity consumed by systemwide customers and not only North Carolina customers**

   There is no requirement that the Utilities Commission segregate the total fuel cost per unit for only that electricity consumed by North Carolina retail customers from the systemwide fuel cost per unit in determining the appropriate adjustment in future rates based solely on the increased cost of fuel pursuant to an expedited G.S. § 62-134(e) proceeding.

3. **Utilities Commission § 39— consideration of additional gross receipts tax—proper**

   Consideration by the Utilities Commission of the G.S. § 105-116 additional gross receipts tax in a G.S. § 62-134(e) proceeding was not improper.

4. **Utilities Commission § 24— historical test period data—use in expedited proceedings proper**

   The Utilities Commission may, in an expedited G.S. § 62-134(e) proceeding, use the data from the historical test period as a basis for an increase in the future billing period without having to undergo the delay and burden of fine-tuning such data to compensate for any abnormalities during the test period. It is the full-blown general rate hearing, not the expedited and limited fuel adjustment proceeding, which serves to take account of all the minute factors which bear on the reasonableness of rates.

5. **Utilities Commission § 24— fuel adjustment proceedings—purchased power cost allowed to extent of fuel cost**

   In an expedited fuel adjustment proceeding pursuant to G.S. § 62-134(e), the Utilities Commission may include an adjustment for increased costs incurred by the fuel component of purchased power from other utilities.

However, a purchasing utility's increased payments which go towards the selling utility's non-fuel production costs cannot be the basis of an adjustment under G.S. § 62-134(e).

APPEAL by intervenors, Public Staff of the North Carolina Utilities Commission and North Carolina Textile Manufacturers Association from an order of the North Carolina Utilities Commission entered 24 October 1980. Heard in the Court of Appeals on 8 March 1982.

This appeal arises out of an application, by Carolina Power and Light Company (CP&L), for a Utilities Commission order approving an adjustment in the basic rates for electricity to be sold by CP&L to its customers; CP&L sought an increase in such rates "for bills rendered on and after December 1, 1980," and was applying for the rate increase, pursuant to G.S. § 62-134(e), on the sole ground that it had incurred increased fuel expenses in the relevant previous historical test period of May through August 1980. Upon the intervention by the North Carolina Textile Manufacturers Association and the Public Staff of the North Carolina Utilities Commission, the Utilities Commission conducted an evidentiary hearing and thereafter entered an "Order Modifying Adjustment of Rates and Charges Pursuant to G.S. 62-134(e)." By such Order, the Commission found that "[d]uring the four-month test period for the present application of May, June, July and August of 1980, CP&L incurred increases in the cost of fuel and purchased power in the amount of approximately $62 million, . . . [and] CP&L's fuel generating costs were $0.01932 per kilowatt-hour" and the Commission thereupon allowed CP&L a .923 cent per kilowatt-hour increase in its rates, such increase being based on a formula designed to achieve an adjustment for changed fuel costs. Although it is not relevant to this appeal, the Commission ordered that the .923 cent per kilowatt-hour fuel cost adjustment be apportioned over two four-month billing periods, rather than entirely in the applied-for four-month period of December 1980 through March 1981. Hence, the Commission's order mandated CP&L, for the December 1980 through March 1981 billing months, to "adjust its base retail rates by the addition of an amount equal to $.00462 per kilowatt-hour," and mandated that CP&L, "for the Billing Months of April through July 1981 . . . adjust its base retail rates by the addition of an amount equal to $.00461 per kilowatt-hour" in addition to any fuel cost ad-

justment deemed proper after a later fuel adjustment procedure for that second four-month billing period, based on its relevant test period. From the Order of the Commission, each of the intervenors appealed.

*Hunton & Williams, by R. C. Howison, Jr., Edward S. Finley, Jr., and Edgar M. Roach, Jr.; and John T. Bode and Robert T. Bockman, for Carolina Power and Light Company, applicant appellee.*

*Robert F. Page and Karen E. Long, for the Public Staff, North Carolina Utilities Commission, intervenor appellant.*

*Thomas R. Eller, Jr., for the North Carolina Textile Manufacturers Association, intervenor appellant.*

HEDRICK, Judge.

We first note that the statute out of which the proceedings before the Commission, and from which the Commission's order emanated, G.S. § 62-134(e), has since been repealed by 1981 N.C. Sess. Laws Ch. 1197, § 2 (enacted 17 June 1982). The Chapter containing such repeal nowhere states the effect of the repeal on already pending G.S. § 62-134(e) proceedings, but does state, "all rates and changes under G.S. § 62-134(e) shall terminate not later than December 1, 1982." 1981 N.C. Sess. Laws Ch. 1197, § 3 (enacted 17 June 1982). Since the rate increase challenged in the present case pertained to a period well before December 1, 1982, and since "[a] statute will not be construed to have retroactive effect unless that intent is clearly expressed or arises by necessary implication," *In re Will of Mitchell*, 285 N.C. 77, 79-80, 203 S.E. 2d 48, 50 (1974), we will treat G.S. § 62-134(e) as the controlling statute notwithstanding its repeal as to certain fuel adjustment proceedings which are held later than the proceedings at issue in the present case.

[1] The first assignments of error brought forward in the intervenor's briefs relate to the Commission's denial of a motion to have the instant fuel adjustment proceedings, which were being conducted pursuant to G.S. § 62-134(e), consolidated with a CP&L general rate case already in progress and being conducted pursuant to G.S. § 62-133. Intervenors argue that the Commission's Order allowing an upward adjustment, based on increased costs

State ex rel. Utilities Commission v. Public Staff

of fuel, in CP&L's rates was reversible error in that such adjustment was made in an expedited G.S. § 62-134(e) proceeding, which provides for no inquiry into the reasonableness of the increased fuel costs upon which such adjustment is based, rather than in an available, then-pending CP&L general rate case, in which inquiries into the reasonableness of CP&L's management practices are required. Intervenors also argue that the Commission's Order allowing a G.S. § 62-134(e) rate adjustment was further tainted with reversible error in that the challenged Commission Order in the instant proceeding (Docket No. E-2, Sub 402) was incorporated into the Commission's Order in the general rate case (Docket No. E-2, Sub 391), dated 15 January 1981, thereby effectively exempting CP&L's fuel costs from any inquiry into their reasonableness, even in a general rate case.

G.S. § 62-134(e) states in pertinent part:

> Notwithstanding the provisions of this Article, upon application by any public utility for permission and authority to increase its rates and charges based solely upon the increased cost of fuel used in the generation or production of electric power, the Commission shall suspend such proposed increase for a period not to exceed 90 days beyond the date of filing such application to increase rates. . . . The Commission shall promptly investigate applications filed pursuant to provisions of this subsection and shall hold a public hearing within 30 days of the date of the filing of the application to consider such application, and shall base its order upon the record adduced at the hearing, such record to include all pertinent information available to the Commission at the time of hearing. The order responsive to an application shall be issued promptly by the Commission. . . . A proceeding under this subsection shall not be considered a general rate case.

By the clear and express language of G.S. § 62-134(e), "the legislature has provided a procedure by which a public utility may apply to the Utilities Commission for authority to increase its rates and charges *based solely upon the increased cost of fuel* used in the generation of electric power. . . ." *State ex rel. Utilities Commission v. Virginia Electric and Power Co.* [hereinafter referred to as "Vepco"], 48 N.C. App. 453, 460, 269 S.E. 2d 657, 661, *disc. rev. denied*, 301 N.C. 531, 273 S.E. 2d 462

(1980) [emphasis in original]. The legislature enacted G.S.
§ 62-134(e) not as a substitute for a general rate case, but to pro-
vide an expedited procedure by which the volatile and uncon-
trollable prices of fuels could be quickly taken into account in a
utility's rates and charges. *Id.* "[P]lant efficiency as it bears upon
fuel cost is not a factor to be considered in the limited and ex-
pedited proceeding provided for by G.S. § 62-134(e)." *Id.* at 462,
269 S.E. 2d at 662. Since "[t]he procedure provided [by G.S.
§ 62-134(e)] is an expedited one 'and shall not be considered a
general rate case,'" *Id.* at 460, 269 S.E. 2d at 661 [footnote omit-
ted], inquiries into the reasonableness of the fuel costs incurred
(other than the reasonableness of the prices paid for such fuel) are
not proper in a fuel adjustment proceeding. *See Id.*

On the other hand, review by the Utilities Commission of the
reasonableness of "management decisions . . . *in a general rate
case* is not only entirely appropriate but even necessary[;] . . . the
Utilities Commission . . . [must] take into account the efficiency
of the company's operations in fixing its rates in a general rate
case as provided in G.S. 62-133." *Id.* at 461-62, 269 S.E. 2d at 662
[emphasis in original]. This requirement, for general rate cases, of
an inquiry into the reasonableness of incurred costs extends to
fuel costs incurred by the utility. *See Id.* and G.S. § 62-133(b)(3),
requiring the Commission, in a general rate case, to ascertain the
"utility's *reasonable* operating expenses." [Emphasis added.]

Hence, a fuel adjustment proceeding under G.S. § 62-134(e)
and a general rate case under G.S. § 62-133 are entirely different
in their functions and basic procedures. This fundamental dif-
ference between the two justifies the action of the Commission in
hearing CP&L's application for a rate adjustment based solely on
the increased cost of fuel in a G.S. § 62-134(e) proceeding rather
than in the then-pending general rate case, since such ad-
justments for increased fuel costs are to be made in expedited
G.S. § 62-134(e) proceedings.

Intervenors, however, are concerned that if adjustments for
fuel cost increases are always rendered in expedited G.S.
§ 62-134(e) proceedings, in which the reasonableness of the in-
creases are irrelevant, then public utilities will always be able to
achieve virtually automatic rate increases based on their in-
creased costs of fuel, even if the utilities were manifestly

unreasonable in incurring such increases. Their concern is unwarranted. Rate adjustments granted pursuant to G.S. § 62-134(e) are purely interim adjustments made to a base rate previously determined in a G.S. § 62-133 general rate case; the holding of general rate cases subsequent to fuel adjustment proceedings assures that a utility's fuel costs will be scrutinized for reasonableness. First, a base rate taking all considerations of reasonableness into account (including the reasonableness of fuel costs) is determined in a general rate case. In the interim between the general rate case establishing that base rate, $r_1$, and the next general rate case establishing base rate $r_2$, any number of rate adjustments based solely on the changing cost of fuel may be made to $r_1$, and the effect of such adjustments is cumulative. Hence, if in the interim between $r_1$ and $r_2$, three expedited fuel adjustment proceedings are held and have produced respective adjustments to $r_1$ of $a_1$, $a_2$, and $a_3$, the adjusted rate after those three proceedings will be $r_1 + a_1 + a_2 + a_3$. This adjusted rate may include upward adjustments which are based on absolutely unreasonable fuel costs, yet until the next general rate case such adjustments are permissible. When such a general rate case is held, however, the resulting rate established therein, $r_2$, is based on only those expenditures (including fuel expenditures) which are reasonable, Vepco, *supra*, and is the new base rate—$r_1$ and the adjustments thereto are superseded and of no further force. In this manner, utility rates, including that portion attributable to fuel costs, *are* periodically made to reflect reasonableness.

In the present case, the Commission properly considered the application for a fuel cost-based adjustment in a separate G.S. § 62-134(e) proceeding, rather than consolidating that application with the then-pending general rate case. The application for a fuel cost-based adjustment was entitled to the expedited consideration of a G.S. § 62-134(e) proceeding, and even if the adjusted rate ordered in the G.S. § 62-134(e) proceeding were eventually superseded by the reasonable rate established in the then-pending general rate hearing, it would be of valid force until so superseded. Further, the intervenor appellants have shown us nothing in the record to prove that the Commission did not follow the proper procedures, as discussed *supra*, for a G.S. § 62-134(e) adjustment.

Under these assignments of error pertaining to the Commission's refusal to consolidate, intervenors additionally cite as grounds for reversal of the Commission's Order in Docket No. E-2, Sub 402, the following language from the "Order Granting Partial Increase in Rates and Charges" entered 15 January 1981 in the concurrent general rate case, Docket No. E-2, Sub 391:

In addition, the Commission has considered the matter of the appropriate fuel base to be used in the final rates approved in this case. Docket No. E-2, Sub 402, was consolidated with this docket in order to allow full consideration of this matter. The fuel cost and resulting fuel factor found to be appropriate in that docket is just and reasonable, and the Commission affirms its decision in Docket E-2, Sub 402. The rates approved in this docket should reflect the fuel charges approved in Docket No. E-2, Sub 402.

Intervenors argue that this language shows that the Commission, in the general rate hearing numbered E-2, Sub 391, used expedited G.S. § 62-134(e) methodology in setting the fuel cost portion of CP&L's general rate, rather than the full-blown G.S. § 62-133 procedures required of a general rate case. This argument, however, is not grounds for reversal of the Commission's Order challenged in the present case, which was a fuel adjustment proceeding. However erroneous the Commission's procedures may have been in Docket No. E-2, Sub 391, such alleged errors have no bearing on the appeal from the order challenged in the present case, which was entered in Docket No. E-2, Sub 402. These assignments of error are overruled.

[2] Intervenor North Carolina Textile Manufacturers Association (NCTMA) next assigns error to the Commission's consideration of CP&L's systemwide fuel cost per kilowatt-hour for the relevant historical test period in determining the appropriate adjustment in future rates based solely on the increased cost of fuel. The argument here presented is that the Commission was required to consider the total fuel cost per unit for only that electricity consumed by North Carolina retail customers. It is not clear to us that there is any difference between CP&L's systemwide fuel cost per unit of electricity, and its fuel cost per unit of electricity consumed by North Carolina retail customers, and assuming arguendo that the North Carolina figure may be segregated from the

systemwide figures, we are aware of no requirement that the Commission perform such a segregation and rely on only the segregated North Carolina fuel cost per unit in allowing adjustments pursuant to an expedited G.S. § 62-134(e) proceeding. This assignment of error is overruled.

[3] Intervenor NCTMA next assigns error to the Commission's inclusion, in the rate adjustment permitted CP&L, of an amount for the increased gross receipts taxes CP&L would incur on the additional revenues it receives pursuant to the upward adjustment based on increased fuel costs. NCTMA argues that such an allowance is for something other than the increased cost of fuel, that it duplicates allowances made in the subsequent general rate case, and that the allowance is improper since the amount of additional revenues, and of the gross receipts taxes thereon, have not yet even been incurred.

G.S. § 105-116 imposes a tax of six percent on the gross receipts of electric utility companies. As will be demonstrated below, an allowance in a G.S. § 62-134(e) proceeding for this gross receipts tax factor is a permissible method of effecting the purpose, as described in Vepco, *supra*, of G.S. § 62-134(e), which is to enable utilities to receive an expedited adjustment of their rates based on the volatile and uncontrollable costs of fuel. If the Commission, in a fuel adjustment proceeding, determines that fuel costs in the relevant historical test period require an upward adjustment of some amount $a$ for the billing period in question, then the utility's revenues per kilowatt-hour will be increased by $a$ but then decreased by $.06a$, the gross receipts tax factor. Hence, without an adjustment for the gross receipts tax factor, the utility would not receive an adjustment, $a$, sufficient to keep up with its increased fuel costs, but would receive a net amount less than $a$, to wit $a$ minus $.06a$. We will not construe G.S. § 62-134(e) as requiring such a result, since to do so would frustrate the purposes of the statute. *See State ex rel. Utilities Commission v. Edmisten*, 294 N.C. 598, 242 S.E. 2d 862 (1978). Rather, the gross receipts tax factor may be taken into account in an adjustment granted pursuant to G.S. § 62-134(e). Further, the allowance of adjustments which take such factors into account in a fuel adjustment proceeding and in a subsequent general rate hearing does not result in a double recovery by the utility, since, as previously discussed, the rate established in the subsequent general rate

proceeding supersedes and displaces the rates established previously in the fuel adjustment proceeding. Finally, the fact that the utility has not yet incurred the increased gross receipts taxes allowed for in the adjustment does not make such an adjustment improper. The adjustment is made not to recover costs and taxes previously incurred, *see State ex rel. Utilities Commission v. C. F. Industries,* 299 N.C. 504, 263 S.E. 2d 559 (1980), but to enable a utility to charge a current rate based on a reasonable approximation of what its costs and taxes will be in the relevant billing period. Consideration by the Commission of what CP&L's additional gross receipts tax would be in the billing period for which adjustment was sought was not improper. This assignment of error is overruled.

[4] In their next assignment of error, the North Carolina Textile Manufacturers Association argues that the rate increase allowed by the Commission was tainted by reversible error in that it was based on costs incurred in a previous test period, without any compensating adjustment for abnormalities in that previous test period. The NCTMA here contends that without adjustment for such cost-increasing abnormalities in the previous test period, the experience of such test period cannot be used as a basis for an increase under G.S. § 62-134(e) for the relevant future billing period. NCTMA also contends that the Commission improperly allowed a rate increase to recover past operating expenses which were incurred but not recovered in the previous test period.

"The procedure provided [by G.S. § 62-134(e)] is an expedited one 'and shall not be considered a general rate case,' " Vepco, *supra,* at 460, 269 S.E. 2d at 661; it is a limited proceeding, *Id.,* and is designed to avoid "the regulatory lag . . . incident to repeated general rate cases." *State ex rel. Utilities Commission v. Edmisten,* 291 N.C. 451, 472, 232 S.E. 2d 184, 196 (1977). Just as Vepco, *supra,* holds that a G.S. § 62-134(e) proceeding should not be burdened with questions about the reasonableness of fuel costs incurred in the historical test period, so too should such proceeding be free of concerns about how representative the historical test period is with respect to the billing period for which adjustment is sought. The Commission may, in an expedited G.S. § 62-134(e) proceeding, use the data from the historical test period as a basis for an increase in the future billing period without having to undergo the delay and burden of

fine-tuning such data to compensate for any abnormalities during the test period. It is the full-blown general rate hearing, not the expedited and limited fuel adjustment proceeding, which serves to take account of all the minute factors which bear on the reasonableness of rates. *See Id.* Furthermore, NCTMA is incorrect in its contention that the challenged rate adjustment provides for any recovery of past fuel costs incurred by CP&L. The increase approved by the Commission's Order was "pursuant to . . . the formula" which uses past fuel costs as a guide for what the fuel costs will be in the future billing period; the relevance, in the formula, of past fuel costs is not that those past fuel costs be recovered in the future. This assignment of error is without merit.

[5] The final assignment of error employed by intervenors in their attempt to demonstrate the excessiveness of the rate adjustment allowed by the Commission is that the rate adjustment improperly includes an adjustment for increased costs incurred by CP&L in its purchase of power from other utilities. For instance, the intervenor Public Staff argues that adjustments pursuant to an expedited G.S. § 62-134(e) proceeding may be made only for changes in costs incurred by CP&L "for fuel used by CP&L in its own generating plants," and not for changes in costs it incurs in its purchases of power from other utilities. The intervenors further argue that the Commission must first conduct an inquiry into the reasonableness of any past purchase by CP&L of power from another utility before the Commission may allow CP&L to adjust its future rates to correspond to any changing cost it incurred in such purchase, and that such inquiries into reasonableness may be made only in a G.S. § 62-133 general rate hearing, and may not be made in a G.S. § 62-134(e) expedited proceeding.

We again note that G.S. § 62-134(e) provides an expedited procedure by which a utility may be granted an increase in rates based solely on the increased cost of fuel used in the generation of electric power. Vepco, *supra.* The intervenors' assignments of error here under consideration raise the question of what upward adjustment, if any, may be made in a utility's rates in an expedited G.S. § 62-134(e) proceeding when the basis for adjustment is an increase in costs incurred by the utility in its purchase of power from other utilities.

When a utility makes an expenditure for power purchased from another utility, such expenditure constitutes a payment to the selling utility for various items. One such item is the selling utility's profit on the sale; another such item is the cost to the selling utility of producing the power it sold; hence, the purchasing utility's expenditure goes towards various of the selling utility's production costs for the power sold, *e.g.* the labor costs, maintenance costs, construction costs, and fuel costs of *the selling utility.* If a power-purchasing utility's expenditures for purchased power are greater during the relevant historical test period than in the relevant preceding base period, and the increase is attributable to the increase to the selling utility, between the two periods, in its labor, maintenance, and construction costs in producing the power sold, such increase incurred by the purchasing utility will not justify an adjustment in its rates in a G.S. § 62-134(e) proceeding, since G.S. § 62-134(e) proceedings allow only for adjustments "*based solely upon the increased cost of fuel.*" *Id.* at 460, 269 S.E. 2d at 661. Stated differently, when a purchasing utility's increased payments go towards the selling utility's non-fuel production costs, such increased payments cannot be the basis of an adjustment under G.S. § 62-134(e).

A different question, however, is presented when a utility's increase in expenditures for purchased power is attributable to the increase, between the two periods, of the cost to the selling utility of fuel used in producing the power sold. In such an instance, the fuel cost incurred by the selling utility in producing the power it sold to the buying utility during the relevant test period is higher than the selling utility's fuel cost for any power sold the buying utility in the previous base period, and the selling utility has recovered its increased fuel costs by increasing that portion of the buying utility's bill which is attributable to the selling utility's fuel costs. In paying such a bill, the buying utility has incurred, albeit indirectly, an increased cost of fuel. Such an increase in a buying utility's fuel component expenditure for purchased power could therefore justify an increase in the buying utility's rates, pursuant to G.S. § 62-134(e). Vepco, *supra*, states that G.S. § 62-134(e) increases may be "*based solely upon the increased cost of fuel* used in the generation of electric power," *Id.* at 460, 269 S.E. 2d at 661, and such a basis for an increase includes the increased cost of fuel used by a selling utility in the

generation of electric power, as well as the increased cost of fuel used in the generating plants of the utility applying for adjustment. The increase experienced by the selling utility is incurred by the power-purchasing utility when it pays for the purchased power, and this increase may properly be the basis of an adjustment, based solely on the cost of fuel, in the power-purchasing company's rates, pursuant to G.S. § 62-134(e).

To the allowance of a G.S. § 62-134(e) adjustment for an increase in the fuel component of purchased power, the intervenors object on the grounds that such an allowance would exempt the applicant utility's purchases of power from an examination into the reasonableness of such purchases, and that the increased costs incurred therefrom could be taken into account in an expedited G.S. § 62-134(e) proceeding, which proceedings make no inquiry into the overall prudence of the utility's management practices. This argument is only partially true: the only increased component of purchased power costs which may be the basis of a G.S. § 62-134(e) adjustment is the fuel cost component, and nothing else. Intervenors are correct, however, insofar as they argue that under our ruling today, adjustments may be made for increases in the fuel cost component of purchased power even if the utility was manifestly unreasonable and imprudent in incurring such increases. "[P]lant efficiency as it bears upon fuel cost is not a factor to be considered in the limited and expedited proceeding provided for by G.S. § 62-134(e). Vepco, *supra*, at 462, 269 S.E. 2d at 662. Hence, even if it could be demonstrated that a reasonably managed utility could have served its customers' needs without expending additional funds on purchased power and could have thereby avoided the increased fuel component of purchased power costs, the power-purchasing utility could still use G.S. § 62-134(e) to obtain an upward adjustment for the increased fuel component.

That this result obtains, however, is no refutation of our holding allowing expedited G.S. § 62-134(e) adjustments for the fuel component of purchased power costs. It is the language of the statute which requires an expedited adjustment for increases based on fuel costs, and this language implicitly extends to the fuel component of purchased power costs. Each item of the power production costs incurred by a utility may be either reasonable or unreasonable; with respect to most such costs, *e.g.* labor costs, an

increase therein can never be the basis of an upward adjustment in future rates until it has been determined in a general rate hearing that the utility was reasonable in incurring such increase. With respect to fuel costs, however, increases therein may be the basis of an upward adjustment pursuant to G.S. § 62-134(e), without any inquiry into whether the utility employed prudent management practices in incurring the increases (with the exception of an inquiry into the reasonableness of the prices paid for such fuel). Vepco, *supra*. Although even increases incurred by a utility for its fuel costs and fuel components must be subjected to scrutiny, in a general rate case, to determine whether they conform to reasonable management practices, such increases may in the interim be the basis of an expedited rate increase under G.S. § 62-134(e) without a determination as to reasonableness. Vepco, *supra*. This expedited process is simply the way the statute works, and the language employed by the legislature indicates its intention to include increases in the fuel cost component of purchased power thereunder.

In the present case, the record is ambiguous as to exactly what costs of the relevant historical test period were considered by the Commission in allowing CP&L to adjust its rates upward. An exhibit introduced by CP&L and entitled "Nevil Exhibit B" stated that "Total Cost Fuel" for the relevant May 1980 through August 1980 test period was $191,757,875. That figure was relied upon in the computation of the adjustment, and the figure also appears on another exhibit introduced by CP&L and entitled "Nevil Exhibit C." "Nevil Exhibit C" indicates that the figure is the sum of various component amounts expended by CP&L to achieve its total cost of fuel during the relevant test period, and the exhibit shows what those component amounts are. Amounts are listed for "coal" costs, "oil" costs, and "natural gas" costs. Significantly, however, "Nevil Exhibit C" does not contain the category "Fuel Cost Component of Purchased Power." Instead, the exhibit contains a category for "Purchased Power," and lists $45,452,648 as the total cost thereof. This entry suggests that the Commission allowed a G.S. § 62-134(e) adjustment based on an increase in all costs paid by CP&L for purchased power, rather than just its fuel component costs; as discussed above, G.S. § 62-134(e) may not be used to effect adjustments based on increases in production costs of purchased power other than the fuel costs. That amount of the

$45,452,648 which does not represent the fuel cost component of purchased power may not be considered in determining CP&L's fuel cost for the test period. That such amount may have been improperly considered is further suggested by language in the Commission's Order that "[d]uring the four-month test period . . . , CP&L incurred increases in the cost of fuel and *purchased power* in the amount of approximately $62 million" [emphasis added]; again, the language indicates that, with respect to purchased power costs, more than increases in just the fuel component was considered by the Commission. On the other hand, the record also contains the formula used in calculating the fuel adjustment factor, and an explanation of the variables used in such formula. This explanation breaks down the total fuel costs variable into its various components, one of which is "[p]urchased power *fuel costs* such as those incurred in Unit Power and Limited Term Power purchases where the fossil and nuclear fuel costs associated with energy purchased are identifiable and are identified in the billing statement." [Emphasis added.] This language suggests that the Commission properly limited itself to consideration, with respect to purchased power, of the fuel cost component.

Because of the uncertainty in the record as to whether the rate adjustment allowed by the Commission was based in part on increases incurred by CP&L in purchased power costs other than fuel component costs, there is a possibility that the allowed adjustment was too high.

> The reviewing court has power without determining and disposing of the cause to remand it to the lower court for further proceedings, where the record is not in condition for the appellate court properly to decide the questions presented with justice to all parties concerned, and it should exercise such power wherever justice calls for a remand to effect a proper decision.

5B C.J.S. Appeal & Error § 1836, 233 (1958) [footnote omitted]; *see also Ellison v. Hunsinger,* 237 N.C. 619, 75 S.E. 2d 884 (1953); *Trustees of Guilford College v. Guilford County,* 219 N.C. 347, 13 S.E. 2d 622 (1941); *Smith v. Board of County Commissioners of Bladen County,* 191 N.C. 775, 133 S.E. 1 (1926); *Bradley v. Jones,* 76 N.C. 204 (1877); 5 Am. Jur. 2d Appeal & Error § 962 (1962). Hence, the order appealed from is vacated and the cause is

remanded to the Commission for further proceedings to determine what amount, if any, of the "Purchased Power" figure of $45,452,648 is attributable to the fuel component cost of such "purchased power," and for the entry of a new order based on such determination.

Vacated and remanded.

Chief Judge MORRIS and Judge VAUGHN concur.