State ex rel. Utilities Commission v. Public Staff

STATE OF NORTH CAROLINA EX REL. UTILITIES COMMISSION; CAROLINA POWER AND LIGHT COMPANY (APPLICANT); CHAMPION INTERNATIONAL CORPORATION; AND RUFUS L. EDMISTEN, ATTORNEY GENERAL v. THE PUBLIC STAFF-NORTH CAROLINA UTILITIES COMMISSION; AND NORTH CAROLINA TEXTILE MANUFACTURERS ASSOCIATION, INC.

STATE OF NORTH CAROLINA EX REL. UTILITIES COMMISSION; CAROLINA POWER & LIGHT COMPANY (APPLICANT); KUDZU ALLIANCE; AND NORTH CAROLINA TEXTILE MANUFACTURERS ASSOCIATION, INC. v. THE PUBLIC STAFF-NORTH CAROLINA UTILITIES COMMISSION

STATE OF NORTH CAROLINA EX REL. UTILITIES COMMISSION; VIRGINIA ELECTRIC AND POWER COMPANY (APPLICANT); AND NORTH CAROLINA TEXTILE MANUFACTURERS ASSOCIATION, INC. v. THE PUBLIC STAFF

Nos. 529PA82 and 530A82

(Filed 7 September 1983)

**1. Electricity § 3; Utilities Commission § 38— fuel clause proceeding—cost of purchased power**

Former G.S. 62-134(e) did not permit an electric utility in a fuel clause proceeding to obtain any increase or adjustment in its rates or charges to recover any of its costs or expenses for purchased power, the cost of purchased power being recoverable only in a general rate case.

**2. Electricity § 3; Utilities Commission § 38— general rate case—reasonableness of cost of purchased and interchanged power**

In allocating the cost of purchased and interchanged power under former G.S. 62-134(e) in a general rate case, the Utilities Commission should hear and consider evidence as to the reasonableness of the utility's decision to make the purchases and exchanges in question and the reasonableness of the price paid for such purchases or the value of the power exchanged and should allow or disallow such expenses accordingly.

APPEALS by the Public Staff of the North Carolina Utilities Commission in case No. 529PA82, reported at 58 N.C. App. 480, 293 S.E. 2d 880 (1982), and by CP&L and VEPCO in case No. 530A82, reported at 58 N.C. App. 453, 293 S.E. 2d 888 (1982), from the decisions of the Court of Appeals reversing orders of the Utilities Commission (hereinafter Commission) in three separate fuel adjustment proceedings heard pursuant to former G.S. § 62-134(e) (repealed 17 June 1982 by Chapter 1197 of the Session Laws of 1981 (Regular Session 1982)).

Our case No. 529PA82 is the appeal in the Utilities Commission, CP&L Docket No. E-2, Sub 402, in which the Commission granted an increase in rates including the entire cost of purchased power and the Public Staff appealed. The appeal was heard by a panel of the Court of Appeals as case No. 8110UC392 and the order of the Commission was vacated and remanded. That panel of the Court of Appeals unanimously held in effect that only the fuel component of purchased power costs was recoverable in a fuel clause proceeding. Both CP&L and the Public Staff requested and received a writ of certiorari from this Court to review the decision of the Court of Appeals.

Our case No. 530A82 is the appeal in the consolidated Utilities Commission, CP&L Docket No. E-2, Sub 411, in which a subsequent increase for a later period was granted, and VEPCO Docket No. E-22, Sub 258, in which a reduction in rates due to a decrease in fuel costs was allowed. In both dockets the Commission allowed recovery of the fuel component of purchased power costs and the Public Staff appealed the Commission's order in both dockets. Docket Nos. Sub 411 and Sub 258 (hereinafter Sub 411/258) were consolidated by the Court of Appeals and were heard by a different panel of that court as case Nos. 8110UC812 and 8110UC865. A divided panel vacated the orders of the Commission and remanded the cases to the Commission. The majority of that divided panel held in effect that *no* part of the costs of purchased power could be recovered in a fuel clause proceeding.

Although the separate opinions of the two panels of the Court of Appeals were issued on the same day they were not consistent — one panel holding that only the fuel component of purchased power costs was recoverable in a fuel clause proceeding and the other panel holding that no part of purchased power costs was recoverable in a fuel clause proceeding.

*Charles D. Barham, Jr.; Richard E. Jones; Robert S. Gillam; and Bode, Bode & Call, by John T. Bode, for CP&L (No. 529PA82).*

*Charles D. Barham, Jr.; Richard E. Jones; Robert S. Gillam; and Bode, Bode & Call, by John T. Bode, for CP&L (No. 530A82).*

*Hunton & Williams, by Robert C. Howison, Jr., Edward S. Finley, Jr., and Edgar M. Roach, Jr.; and Guy T. Tripp III, for VEPCO (No. 530A82).*

*Karen E. Long and Gisele L. Rankin, for Public Staff (Nos. 529PA82 and 530A82).*

MEYER, Justice.

[1] The primary issue presented is whether G.S. § 62-134(e) as it existed at the time of the proceedings in question permitted a utility *in a fuel clause proceeding* to obtain any increase or adjustment in its rates and charges to recover any of its costs or expenses for purchased power. We hold that the statute as it then existed did not permit recovery for any portion of purchased power costs in a fuel clause proceeding and that the cost of purchased power, if recoverable, was recoverable only in the general rate cases. We hold that the Commission erred in CP&L Docket No. E-2, Sub 402, in allowing the recovery of the entire cost of purchased power and erred in CP&L Docket No. E-2, Sub 411, and in VEPCO Docket No. E-22, Sub 258, in allowing the recovery of the fuel component of purchased power costs. Because some portion of purchased power costs which the utilities were entitled to recover may not have been recovered in either a general rate case or a fuel clause proceeding, we find it necessary to remand this cause to the Utilities Commission for such a determination.

We note at the outset that the decision of this Court on the question presented will be of limited precedential value. G.S. § 62-134(e) was repealed on 17 June 1982. Thus, that statute will not be applicable in the future in adjusting fuel-related expenses. The same act which repealed G.S. § 62-134(e) enacted the new G.S. § 62-133.2 which provides an entirely new procedure for making fuel charge adjustments. We observe that the new G.S. § 62-133.2 procedure allows the Utilities Commission to permit an electric utility to charge as a rider to its rates the cost of fuel and the fuel component of purchased power used in providing its North Carolina customers with electricity as established in its previous general rate case. Having been enacted subsequent to the order of the Commission to which these appeals relate, the new G.S. § 62-133.2 has no application to these cases.

A review of the lengthy proceedings before the Utilities Commission in each of the cases before us is unnecessary. The issue presented in all three of the cases is so basic that the peculiar facts presented by the individual dockets are not determinative of the issue. For a review of the proceedings in the individual dockets the reader is referred to the opinion of the Court of Appeals in each case which is cited in the opening paragraphs of this opinion.

The proper treatment of purchased power costs can best be understood if one is cognizant of the characteristics and benefits of the interconnection between the various systems by which electric utilities are able to exchange and buy and sell electric power and energy with other electric utilities and the considerations which dictate or make advisable such exchanges, purchases or sales. We now examine very briefly that system and those considerations. Because the electric utility systems of our State are interconnected among themselves and with those of other states (and those in turn with others), electric power and energy can flow (or be exchanged) between systems over great distances across a vast power grid or network. These interconnections, and the interchange and exchange agreements that result, enhance reliability by allowing any particular interconnected utility to receive excess power from systems located anywhere on the grid. Such enhanced reliability obviates the need for the high reserve capacity that would otherwise be needed by the utility to meet its peak demand in times of highest usage or when generating units are out of service. By sharing reserves the interconnected systems not only enhance reliability but also reduce the need for capital expenditures necessary to fulfill their reserve needs if they were not interconnected. The ability to interchange and purchase and sell power among interconnected utilities also allows the utilities to schedule plant outages for necessary maintenance and repair at particular times when it might otherwise be impossible. It makes possible staggered construction of large new generating units among interconnected systems. Because it is less expense to build a few large units than many smaller ones and because the projected load of a particular utility would not justify the construction of a large economic unit, the utility could build the larger unit and sell the excess capacity to other intercon-

nected utilities, or delay construction and depend on the other systems until demand justifies construction.

More pertinent to the issue before us is the simple fact that the interconnection of systems allows utilities to purchase power for purely economic reasons. That is, even though a utility might have the available capacity to serve all of its needs at a particular time, it can purchase power at that time at a lower cost than it can generate it with its own units. Such purchases are referred to as purchases made on an economic dispatch basis. Whether power will be purchased may depend *solely* on whether the power needed can be purchased at a lower cost than the purchasing utility's cost of bringing on line its next most efficient, least cost generating unit to serve the need. Such purchases may be made for only an hour, a few hours, or for longer periods. The decision to purchase power from another utility is made by system dispatchers and may be based on one or a combination of reasons and involves consideration of factors such as plant availability (including planned as well as unplanned outages), efficiency of plant operations, heat rate, fuel inventories, etc. Such factors necessarily involve intricate management decisions which deserve close scrutiny as to reasonableness and motivation. The proper exchange with, sale to, or purchase of power from another utility promotes adequate, reliable and economical utility service at just and reasonable rates in accordance with the declared public policy of this State. G.S. § 62-2.

No one could seriously advocate that the cost of interchange and purchased power should be altogether disallowed as a legitimate expense of the utilities. Indeed, the Public Staff of the Commission does not contend that rates set to reflect purchased power expenses should be disallowed, but merely asserts that consideration of such expenses are better left to a general rate case proceeding and that the repealed G.S. § 62-134(e) did not authorize consideration of these expenses in an expedited fuel charge proceeding. It is only the question of the proper forum for allocating the cost of interchanged and purchased power under the former G.S. § 62-134(e) that is before us.

We will now examine the contentions of the parties and the actual practice and procedure of the Commission in allocating the costs of interchange and purchased power. It is the position of

the utility companies that *all* of the costs of purchased power (not just the fuel component) were recoverable in a fuel clause proceeding held pursuant to the now repealed G.S. § 62-134(e). It is the position of the Public Staff that *none* of the costs of purchased power were recoverable in a fuel clause proceeding but was recoverable only in a general rate case proceeding. Neither party's contentions reflect the actual procedure and practices of the Commission in allocating purchased power costs.

The cost of fuel to operate generating plants constitutes a large portion of an electric utility's operating expenses. With the advent of the 1973 Arab oil embargo and the resultant energy crisis, the utility companies experienced dramatic increases in both oil and coal prices. Not only did fuel costs escalate rapidly but they began to fluctuate rapidly. These fuel cost increases and fluctuations led to serious financial problems for the utilities and demanded attention. To protect the utilities and their customers, the Commission in early 1974 authorized a fossil fuel adjustment clause. Under this fuel adjustment clause the companies were permitted to adjust rates periodically to reflect the changes in the cost of fossil fuels. While fuel adjustment clauses had been used occasionally prior to 1974, the issue of their validity had not been addressed directly by this Court.[1] We did address the issue and found such a clause to be valid in *Utilities Comm. v. Edmisten, Attorney General,* 291 N.C. 327, 230 S.E. 2d 651 (1976).

The fuel clause adopted by the Commission in 1974 operated *automatically* on a monthly basis, with rate adjustments being implemented by the companies in accordance with a Commission approved formula without hearings. In 1975 the General Assembly adopted G.S. § 62-134(e) which required the Commission to hold a hearing on each proposed fuel adjustment and to rule on the proposed adjustment within ninety days of its filing. To implement the newly adopted statute and to provide rules for the hearings, the Commission adopted Rule R1-36. The rule originally required fuel clause proceedings every four months. That interval has been changed by amendment to the rule several times and has fluc-

---

1. *See Utilities Commission v. Area Development, Inc.,* 257 N.C. 560, 126 S.E. 2d 325 (1962); *Utilities Comm. v. Light Co. and Utilities Comm. v. Carolinas Committee,* 250 N.C. 421, 109 S.E. 2d 253 (1959); *Utilities Commission v. Municipal Corporations,* 243 N.C. 193, 90 S.E. 2d 519 (1955).

State ex rel. Utilities Commission v. Public Staff

tuated from one month to six months. When the fuel charge changed each month, the rate set in a general rate case remained in effect only one month when it was then superseded by the next fuel clause adjustment. Following a 1978 amendment to Rule R1-36 which extended the period to six months, it became the practice in a general rate case to assume that the fuel-related costs continued at the same level as found in the most recent fuel adjustment proceeding, thus shifting the emphasis on consideration of fuel costs from the general rate case to the fuel clause proceeding.

The formula used by the Commission in calculating fuel adjustments was initially adopted for Vepco and CP&L in general rate cases in 1975 and 1976 respectively and was reaffirmed in a 1978 generic proceeding involving all three major electric utilities.[2] For the purpose of this opinion we will use the formula adopted for CP&L.[3] That formula remained unchanged from 1976 until the repeal of G.S. § 62-134(e) in June 1982 except for a change in the one-month test period which was lengthened or shortened from time to time. When these cases were decided Rule R1-36(c) of the Commission required each utility to file for a fuel adjustment every four months and to calculate the adjustment according to the formula. The Commission's formula was as follows:

2. Virtually identical formulas were adopted in 1975 for Vepco in Virginia Electric and Power Company, Docket No. E-22, Subs 161, 165 and 170, *Sixty-Fifth Report of the North Carolina Utilities Commission: Orders and Decisions* 304, 333, 345 (Oct. 22, 1975), for Duke Power in Duke Power Company, Docket No. E-7, Subs 161 and 173, *Sixty-Fifth Report of the North Carolina Utilities Commission: Orders and Decisions* 191, 223, 231-32 (Oct. 3, 1975), and for Carolina Power & Light Company, Docket No. E-2, Sub 264, *Sixty-Sixth Report of the North Carolina Utilities Commission: Orders and Decisions* 84, 115-17, 122-23 (Feb. 20, 1976). In Carolina Power & Light Company, Docket No. E-2, Sub 316, No. E-7, Sub 231, No. E-22, Sub 216, *Sixty-Eighth Report of the North Carolina Utilities Commission: Orders and Decisions* 129, 136, 139-42 (Aug. 31, 1978), a consolidated generic proceeding involving all three companies, the formulas were reaffirmed.

3. The original CP&L fuel adjustment clause dealt only with the costs of fossil fuel. However, in 1976 the subject matter of fuel adjustment proceedings was broadened to include the costs of nuclear fuel, as well as a portion of purchased power costs, in response to a proposal by the Commission Staff.

### Fuel Cost Formula

$$F = \left(\dfrac{E}{S} - \$0.00850\right)(T)(100)$$

Where

F = Fuel adjustment in cents per kilowatt-hour.

E = Fuel costs experienced during the third month preceding the billing month, as follows:

(A) Fossil and nuclear fuel consumed in the utility's own plants, and the utility's share of fossil and nuclear fuel consumed in jointly owned or leased plants. The cost of fossil fuel shall include no items other than those listed in Account 151 of the Commission's Uniform System of Accounts for Public Utilities and Licensees. The cost of nuclear fuel shall be that as shown in Account 518 excluding rental payments on leased nuclear fuel and except that, if Account 518 also contains any expense for fossil fuel which has already been included in the cost of fossil fuel, it shall be deducted from this account.

### Plus

(B) Purchased power fuel costs such as those incurred in unit power and Limited Term power purchases *where the fossil and nuclear fuel costs associated with energy purchased are identifiable and are identified in the billing statement.*

### Plus

(C) Interchange power fuel costs such as Short Term, Economy and other *where the energy is purchased on economic dispatch basis; costs such as fuel handling, fuel additives and operating and maintenance may be included.*

Energy receipts that do not involve money payments such as Diversity energy and payback of stor-

age energy are not defined as purchased or Inter-change power relative to the Fuel Clause.

<u>Minus</u>

(D)  The cost of fossil and nuclear fuel recovered through intersystem sales including the fuel costs related to economy energy sales and other energy sold on an economic dispatch basis.

Energy deliveries that do not involve billing trans-actions such as Diversity energy and payback of storage are not defined as sales relative to the Fuel Clause.

$S =$ total kilowatt-hour sales during the third month preceding the billing month.

$\$0.00850 =$ Base cost of fuel per KWH sold.

$T =$ adjustment for state taxes measured by gross receipts: 1.06383.

(Emphasis added.)

Paragraphs (B) and (C) of the Commission formula dealt with purchased power. Paragraph (B) related to purchased power transactions which are required in order to enable a utility to meet its customers' demand when its own generation facilities are incapable of supplying that demand. Paragraph (B) provided that for this type of transaction only the selling utility's specifically identifiable fuel costs (the fuel component only) could be considered in adjusting the purchasing utility's rates pursuant to G.S. § 62-134(e). All other costs in this Paragraph (B) type of transaction were considered in general rate cases. Paragraph (B) costs were upheld by the Court of Appeals in Sub 402 but were disallowed by the Court in Sub 411/258.

In contrast to Paragraph (B), Paragraph (C) dealt with "[i]nterchange power fuel costs . . . where the energy is purchased on economic dispatch basis." Energy is purchased on an "economic dispatch" basis when one utility is able to produce electricity at a lower cost than another. Such purchases are a routine practice in the industry and are the subject of interchange agreements among utilities which create mutual obligations to

sell lower-cost electricity to one another under such circumstances. The common practice is to pay the selling utility 50% of the savings realized by the purchasing utility as a fee for providing the lower-cost electricity. This is referred to as a "share the savings" or "split the savings" basis.

In recognition of the unique advantages of economy purchases, Paragraph (C) of the formula provided that when energy was purchased on an economic dispatch basis, not only the selling utility's fuel cost but also "costs *such as* fuel handling, fuel additives and operating and maintenance may be included" in the fuel adjustment calculation (emphasis added). In addition to the specifically listed costs, the cost of the "sharing of the savings" with the selling utility has also been consistently included in the buying utility's costs in computing fuel costs for economic dispatch sales. Since Paragraph (C) allowed consideration of costs other than the selling utility's actual costs of fuel (the fuel component), this paragraph is inconsistent with, and thus impermissible under, the Court of Appeals' holdings in both Sub 402 and Sub 411/258.

Both opinions of the Court of Appeals held that the Commission erred in its allocation of purchased power costs in the fuel adjustment proceedings. As we have previously observed, the Court of Appeals in Sub 402 held that only "the fuel component" of purchased power could be considered in a fuel adjustment proceeding and a different panel in Sub 411/258 held that no part of purchased power costs may be recovered in such a proceeding. The effect of the Court of Appeals' holdings in Sub 402 and Sub 411/258 is to invalidate portions of the formula used by the Commission from 1976 until the repeal of G.S. § 62-134(e) in June 1982.

It is clear that the Commission believed its established practice of allowing the fuel component of purchased power and interchange power cost to be recovered in the fuel clause hearing was not only authorized by statute but was also fully in accord with the practice of the great majority of jurisdictions in the eastern United States. In its order in the VEPCO case (No. 530A82), the Commission found as facts:

The capacity costs of purchased and interchange power were and are not included in said formula. The fuel cost adjust-

ment formula was adopted to enable the Commission and Staff to review more effectively the fuel cost filings made in accordance with G.S. 62-134(e) in the expedited proceedings provided for by that statute.

The inclusion of the allowed fuel costs of purchased power and interchange power has not been modified or altered since the adoption of the formula in 1976. In nearly forty individual proceedings and two generic proceedings concerning the formula and the recovery of fuel costs, this Commission has consistently allowed the recovery of CP&L's allowed fuel costs for purchased power and interchange power. As acknowledged in our Order dated May 18, 1978, in Docket No. E-2, Sub 316, the Public Staff has also heretofore recognized that '[p]roperly monitored, the formula accurately tracks changes in the cost of all fuel, nuclear as well as fossil, and the energy portion of purchased and interchange power.'

A review of our application of the language and procedures of G.S. 62-134(e) clearly indicates our uniform and undisturbed interpretation that the cost of a utility's fuel to be recovered in a fuel proceeding includes allowed fuel costs for purchased and interchange power which are described in the fuel costs adjustment formula. The formula's computation includes only the costs of fuel used to generate or produce power or the cost of equivalent energy purchased. For example, the cost of a ton of coal burned by Duke Power Company included in the price of power purchased by CP&L is just as much a cost of fuel to CP&L as if CP&L had actually burned the coal itself. Consequently, the cost of fuel burned by a selling utility should be considered a component of the fuel cost of the purchasing utility which may be recovered in a proceeding pursuant to G.S. 62-134(e) . . . . Any other conclusion is simply at odds with the language of G.S. 62-134(e) and our consistent construction of such language.

The Public Staff has urged the Commission to abandon that consistent construction of the provisions of G.S. 62-134(e) based on the Public Staff's interpretation of the recent decision of the Court of Appeals of North Carolina in *Virginia Electric and Power Company,* 48 N.C. App. 452, *supra* [Vepco]. While the Public Staff acknowledges that our pre-

viously adopted treatment of the costs of purchased and interchange power in fuel cost adjustment proceedings was the appropriate application of G.S. 62-134(e), the Public Staff now argues that as a consequence of the Vepco decision, the consideration of such costs must be reserved for a general ratemaking proceeding pursuant to G.S. 62-133.

The Commission also found that:

> In addition to North Carolina, twenty-two of the other twenty-four states east of the Mississippi River permit purchased power to be included in their fuel clauses. The Federal Energy Regulatory Commission (FERC) also includes purchased power in wholesale fuel clauses. The Public Utility Regulatory Policies Act (PURPA) of 1978, requires states with automatic fuel adjustment clauses 'to provide incentives for efficient use of resources (including incentives for economical *purchase* and use of fuel and electric energy) . . .' and authorizes the FERC to exempt electric utilities from any provision of state law, or from any state rule or regulation, which prohibits or prevents the voluntary coordination of electric utilities if the FERC determines that such voluntary coordination is designed to obtain economical utilization of facilities and resources.

> The energy portion of purchased and interchange power fuel costs has been allowed to be included in fuel clause proceedings for Carolina Power & Light Company since 1976; the capacity portion of such costs are not permitted to be recovered in the Commission's fuel cost adjustment formula. . . .

Because the Commission was not permitting recovery of the fuel component of purchased power in the general rate cases, it concluded in effect that if recovery of those expenses was not allowed in the fuel clause hearings, it would be denied altogether. It so stated in one of its findings of fact:

> Adoption of the adjustment proposed herein by the Public Staff would lead to the result that for the test period, Vepco would be denied the right to recover in its base fuel cost rates the amount which the Company expended for allowed fuel costs of purchased and interchange power in an ef-

fort to reduce system fuel costs and thereby benefit the using and consuming public. . . .

We accept without reservation the Commission's good faith belief that its established practice of allowing the recovery of the fuel component in fuel clause proceedings was authorized by statute. If, however, the Commission's practice is not authorized by statute (*i.e.*, is in excess of statutory authority), it is the duty of this Court to declare it so. In analyzing our duty on this appellate review, we begin with the proposition that the Utilities Commission is vested with full power to regulate the rates charged by utilities. G.S. § 62-2.

> The General Assembly has delegated to the Commission, and not to the courts, the duty and power to establish rates for public utilities. *Utilities Commission v. Telephone Co.*, 266 N.C. 450, 146 S.E. 2d 487 (1966), *citing Utilities Commission v. Champion Papers, Inc.*, 259 N.C. 449, 130 S.E. 2d 890 (1963). The rates fixed by the Commission must be just and reasonable. G.S. §§ 62-130 and 131. *See Telephone Co. v. Clayton, Comr. of Revenue*, 266 N.C. 687, 147 S.E. 2d 195 (1966). Rates fixed by the Commission are deemed *prima facie* just and reasonable. G.S. § 62-94(e).

*Utilities Commission v. Duke Power Co.*, 305 N.C. 1, 10, 287 S.E. 2d 786, 792 (1982).

On appeal, the authority of the reviewing court, whether the Court of Appeals or this Court, to reverse or modify the order of the Commission, or to remand the matter to the Commission for further proceedings, is limited to that specified in G.S. § 62-94. *Utilities Commission v. Intervenor Residents*, 305 N.C. 62, 286 S.E. 2d 770 (1982); *Utilities Comm. v. Telephone Co.*, 281 N.C. 318, 189 S.E. 2d 705 (1972). It is that statute which specifies the standard of judicial review.

> [G.S. § 62-94] provides, *inter alia*, that the reviewing court may (1) affirm, (2) reverse, (3) declare null and void, (4) modify, or (5) remand for further proceedings, decisions of the Commission. The Court's power to affirm or remand is not specifically circumscribed by the statute. However, the power of the court to reverse or modify and, *a fortiori*, to declare null and void, is substantially circumscribed to situa-

tions in which the court must find (a) that appellant's substantial rights, (b) have been prejudiced, (c) by Commission findings, inferences, conclusions or decisions which are

    (1) in violation of constitutional provisions; or

    (2) in excess of statutory authority or jurisdiction of the Commission, or

    (3) made upon unlawful proceedings, or

    (4) affected by other errors of law, or

    (5) unsupported by competent, material and substantial evidence in view of the entire record as submitted, or

    (6) arbitrary or capricious.

*Utilities Comm. v. Oil Co.*, 302 N.C. 14, 19-20, 273 S.E. 2d 232, 235 (1981).

Pursuant to G.S. § 62-94(b)(2), the appellate court may reverse or modify the decision of the Commission if the substantial rights of the appellants have been prejudiced because the Commission's decision is in excess of statutory authority or jurisdiction of the Commission. Separate panels of our Court of Appeals differ on the issue of the statutory authority of the Commission to allow recovery of only the fuel component or none of the cost of purchased power in a fuel clause proceeding held pursuant to the repealed G.S. § 62-134(e). This Court's review of the decisions of the Court of Appeals in the cases before us is to determine whether those decisions are affected by errors of law. *See* Rule 16 of the North Carolina Rules of Appellate Procedure.

In *Utilities Comm. v. Power Co.*, 48 N.C. App. 453, 269 S.E. 2d 657, *disc. rev. denied*, 301 N.C. 531 (1980), the Court of Appeals held that the Commission's consideration *in a fuel clause proceeding* of Vepco's heat rate and plant availability exceeded the scope of the procedure authorized by G.S. § 62-134(e). The reasoning upon which that decision was based bears close examination as it reflects the very considerations which must be made on the issue of purchased power costs now before us:

    [H]eat rate and capacity factor furnish convenient measuring devises by which to evaluate the overall efficiency with which a particular electrical utility system is operated.

Overall system efficiency ultimately depends upon management decisions made over a long period of time. These involve such questions as when and how often to replace expensive equipment, the number of maintenance employees to be kept on the payroll and the training to be given them, the amount and frequency of planned 'down time' to be devoted to preventive maintenance, and the amount and cost of stand-by equipment required for such planned maintenance 'down time.' In making these decisions management must also take into account such factors as the cost of capital and the availability of funds required to implement them and must balance the need for achieving maximum plant efficiency against the financial costs of achieving that goal.

Review of such management decisions by the Utilities Commission *in a general rate case* is not only entirely appropriate but even necessary, for poorly maintained equipment justifies a subtraction from both the original cost and the reproduction cost of existing plant before weighing these factors in ascertaining the present 'fair value' rate base of the utility's properties as required by G.S. 62-133, *see Utilities Comm. v. Telephone Co.*, 281 N.C. 318, 189 S.E. 2d 705 (1972), and serious inadequacy of a utility company's service, whether due to poor maintenance of its equipment or to other causes, is one of the facts which the Commission is required to take into account in determining what is a reasonable rate to be charged by the particular utility company for the service it proposes to render. *See Utilities Comm. v. Morgan, Attorney General,* 277 N.C. 255, 177 S.E. 2d 405 (1970).

We do not question that the efficiency with which a particular electrical utility company converts its fuel into electricity has a direct and significant bearing upon that company's fuel cost. Obviously it does. Nor do we question the necessity for the Utilities Commission to take into account the efficiency of the company's operations in fixing its rates in a general rate case as provided in G.S. 62-133. Obviously it should. We hold only that plant efficiency as it bears upon fuel cost is not a factor to be considered in the limited and expedited proceeding provided for by G.S. 62-134(e). After all, the legislature enacted that section, not as a substitute for a

general rate case, but to provide an expedited procedure by which the extremely volatile and uncontrollable prices of fossil-fuels could be quickly taken into account in a utility's rates and charges. There is no such volatility in plant efficiency which depends upon long range maintenance decisions and practices carried out over a long period of time. . . .

48 N.C. App. at 461-62, 269 S.E. 2d at 662.

For the same reasons, the cost of purchased power, like heat rate and capacity factor, is not only an appropriate consideration in a general rate case, it is a necessary one.

The cardinal principle of statutory construction is that the intent of the legislature is controlling. *In re Brownlee*, 301 N.C. 532, 272 S.E. 2d 861 (1981); *State v. Fulcher*, 294 N.C. 503, 243 S.E. 2d 338 (1978); *Housing Authority v. Farabee*, 284 N.C. 242, 200 S.E. 2d 12 (1973). In ascertaining the legislative intent, courts should consider the language of the statute, the spirit of the statute, and what it seeks to accomplish. *Stevenson v. City of Durham*, 281 N.C. 300, 188 S.E. 2d 281 (1972). The words of G.S. § 62-134(e) make it clear that only changes in rates *based solely upon the increased cost of fuel* are to be considered in fuel clause proceedings. Those words are plain and unambiguous and interpretation of them by the Utilities Commission is not required. *Utilities Comm. v. Edmisten, Atty. General*, 291 N.C. 451, 232 S.E. 2d 184 (1977) (hereinafter Edmisten II). It is the spirit of the statute that fuel clause proceedings be not only limited in scope but that they be *expedited.* The statute itself provided "[t]he order responsive to an application *shall be issued promptly by the Commission but in no event later than 90 days from the date of filing of such application.* A proceeding under this subsection shall not be considered a general rate case." (Emphasis added.) The speedy approval of rate charges based solely on the increased cost of fuel sought to be accomplished by G.S. § 62-134(e) would be frustrated by the length of time required for a full consideration of all the factors bearing on the reasonableness of making the purchases and the costs of purchased power.

We are also required to consider the consequences which will follow from a construction of the statute one way or the other. *Campbell v. Church*, 298 N.C. 476, 259 S.E. 2d 558 (1979). It seems

apparent that without the opportunity for a thorough and searching examination of the reasonableness of the decision to make the purchases and the reasonableness of the cost of such purchases, the tendency would be that the utility would recover any purchased power costs it incurred without regard to their prudency.

Fuel clause proceedings under G.S. § 62-134(e) which were designedly of a limited and expedited nature are simply not the appropriate forum for the close scrutiny of the many considerations which relate to purchased and interchange power costs. The consequence of allowing the recovery of purchased power costs in an expedited fuel clause hearing is and has been the consideration of rate increases without a full evidentiary inquiry into the reasonableness of making the purchases and the reasonableness of their cost.

We specifically reject the notion that at least the cost of the "fuel component" of purchased power may be recovered by the purchasing utility in an expedited fuel clause proceeding under the repealed G.S. § 62-134(e). Assuming that it were possible to determine from the supplier of purchased power the fuel component of the price for such power or to extrapolate the fuel component, the Commission would have to rely upon the cost analysis and management decisions of the selling utility without the ability or opportunity to test their accuracy or reasonableness.

The utility companies point out to us that paragraphs (B) and (C) of the Commission's fuel cost formula remained in effect for approximately six years (1976 through June 1982) without change and were applied by the Commission in dozens of fuel clause proceedings during that period, unchallenged by the Public Staff. It is true that " '[t]he construction placed upon a statute by the officers whose duty it is to execute it is entitled to great consideration, especially if such construction . . . has been observed and acted upon for many years. . . .' " *Gill v. Commissioners*, 160 N.C. 176, 188, 76 S.E. 203, 208 (1912), *accord, State v. Best*, 292 N.C. 294, 233 S.E. 2d 544 (1977); *MacPherson v. City of Asheville*, 283 N.C. 299, 196 S.E. 2d 200 (1973). Nevertheless, it is ultimately the duty of the courts to construe administrative statutes and they may not defer that responsibility to the agency charged with administering those statutes. While the interpretation of the agency responsible for their administration may be helpful and entitled

to great consideration when the Court is called upon to construe the statutes, that interpretation is not controlling. *Faizan v. Insurance Co.,* 254 N.C. 47, 118 S.E. 2d 303 (1961). It is the Court and not the agency that is the final interpreter of legislation. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 28 L.Ed. 2d 136 (1971); *Campbell v. Currie, Commissioner of Revenue,* 251 N.C. 329, 111 S.E. 2d 319 (1959). We have carefully and thoughtfully considered the Commission's interpretation of G.S. § 62-134(e) as allowing the recovery of a portion of purchased power costs in the fuel clause proceedings and find that interpretation erroneous. We quote with approval the language of Judge (now Justice) Harry Martin in the majority opinion of the panel below in the Vepco case (530A82):

> N.C.G.S. 62-134(e) was properly adopted in 1975 by the General Assembly to allow then hard pressed utilities to compensate for rapidly increasing fuel prices. It was never intended to allow utilities to pass on to consumers the cost of power purchased from other utilities. The Commission states that it has allowed utilities to pass on to the consuming public the cost of purchased power in 'nearly forty individual proceedings' under the cost of fuel adjustment statute—all apparently without express court approval regarding this issue. It is time for the Court to place its interpretation upon the statute. A question of law is never settled until it is settled correctly.

58 N.C. App. at 459, 293 S.E. 2d at 892.

From our review of the language, purpose and history of the repealed G.S. § 62-134(e), we conclude that the Legislature intended that the Utilities Commission consider in the fuel adjustment proceedings only the fluctuations in the price of fossil fuels—oil, coal and natural gas—used by the utility in the production of electric power in its own generating units.[4] The Legislature did not intend to include in the expedited hearing proceedings the myriad of issues relating to purchased or interchange power which necessarily require closer scrutiny. Subsequent action by the Legislature in enacting G.S. § 62-133.2, which

---

4. The parties do not contend nor does the record demonstrate rapid fluctuations in the price of nuclear fuel during the period under consideration.

makes express provision for the consideration of such issues in the general rate cases, has now made its intent clear.

The Commission, in both of these cases, exceeded its statutory authority to the prejudice of the substantial rights of the ratepayers and thus the orders in both cases were affected by error of law. We cannot say that the error was harmless. We hold that the fuel component of the purchased power costs was improperly considered in the Vepco fuel adjustment proceeding under G.S. § 62-134(e). The decision of the Court of Appeals in case No. 529 in which it allowed recovery of the fuel component of purchased power costs to be recovered in a fuel clause proceeding was affected by error of law.

The cost of purchased power should have been considered during the period when G.S. § 62-134(e) was in effect in the general rate case proceedings. The purchased power costs at issue on this appeal may very well constitute legitimate operating expenses of these utilities. If shown to be reasonably and prudently incurred, the utilities are entitled to have these purchased power costs considered for rate-making purposes.

[2] This cause is remanded to the Court of Appeals for further remand to the North Carolina Utilities Commission for a hearing (or hearings as may be deemed by the Commission to be appropriate) in the nature of a general rate case, to determine whether, during the period covered by proceedings which are the subject of this appeal, the utility companies are entitled to recoup any of their costs for purchased and interchange power sought by such companies which have not previously been recovered. Should the Commission deem it appropriate, it may include in such hearing or hearings other electric utilities similarly affected though not parties to the actions reviewed herein. The Commission shall hear and consider evidence as to the reasonableness of the utilities' decision to make the purchases and exchanges in question and the reasonableness of the price paid for such purchases or the value of the power exchanged and will allow or disallow such expenses accordingly. If the Commission determines that the purchased power costs already recouped in the fuel clause proceedings were unreasonable or improper, it shall make appropriate adjustments in the rates. If the Commission determines that already recouped purchased power costs were in all respects

reasonable and proper, then it need make no such adjustments. It is the intent of this Court that on remand the Commission compare rates actually collected with rates it determines should have been collected in light of its determination as to the reasonableness and propriety of purchased power costs and make such adjustments in current rates as is necessary to true-up any discrepancy.

Case No. 529PA82, reversed and remanded.

Case No. 530A82, modified and affirmed and remanded.

Justice HARRY MARTIN took no part in the consideration or decision of this case.