353 S.E.2d 413 (1987)
STATE of North Carolina ex rel. UTILITIES COMMISSION; Carolina Power & Light Company, Applicant; Carolina Utility Customers Association, Inc., Intervenor; Carolina Industrial Group for Fair Utility Rates, Intervenor; Kudzu Alliance, Intervenor Appellees,
v.
Lacy H. THORNBURG, Attorney General, Intervenor, and Public StaffNorth Carolina Utilities Commission, Intervenor Appellants.
No. 8610UC373.
Court of Appeals of North Carolina.
March 3, 1987.
*414 Lacy H. Thornburg, Atty. Gen. by Karen E. Long, Asst. Atty. Gen., Raleigh, for intervenor-appellant Atty. Gen.
Robert P. Gruber, Executive Director by Antoinette R. Wike, Chief Counsel, and Paul L. Lassiter, Staff Atty., Raleigh, for intervenor-appellant Public StaffNorth Carolina Utilities Com'n.
Richard E. Jones, Vice President and Senior Counsel, Raleigh, for applicant-appellee Carolina Power & Light Co.
MARTIN, Judge.
The primary issue presented by this appeal involves the Utilities Commission's interpretation of G.S. 62-133.2(d). Basically stated, the question is whether, by enacting G.S. 62-133.2(d), the General Assembly modified the judicially adopted rule prohibiting retroactive ratemaking, heretofore extant in this State, so as to authorize the Utilities Commission to employ an Experience Modification Factor (EMF) in connection with an electric utility's fuel charge adjustment proceedings in order to provide for a "true-up" of the utility's past over-recoveries or under-recoveries of fuel costs. We hold that G.S. 62-133.2(d) does not authorize such a "true-up" system.
The standard of review of a decision of the Utilities Commission is contained in G.S. 62-94(b). The Court
may reverse or modify the decision if the substantial rights of the appellants have been prejudiced because the Commission's findings, inferences, conclusions or decisions are:
(1) In violation of constitutional provisions, or
(2) In excess of statutory authority or jurisdiction of the Commission, or
(3) Made upon unlawful proceedings, or
(4) Affected by other errors of law, or
(5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted, or
(6) Arbitrary and capricious.
G.S. 62-94(b). Appellants contend that the adoption of the EMF was in excess of the Commission's statutory authority, thus our review is conducted pursuant to G.S. 62-94(b)(2).
In its Order, the Commission utilized an EMF in order to allow CP & L to recoup past under-recoveries of fuel costs. Such true-up procedures have traditionally been prohibited in North Carolina because they constitute retroactive ratemaking. In Utilities Comm. v. Edmisten, Atty. General, 291 N.C. 451, 232 S.E.2d 184 (1977), the Supreme Court stated: "Prospective rate making to recover unexpected past expense, or to refund expected past expense which did not materialize, is as improper as is retroactive rate making." Id. at 469, 232 S.E.2d at 195. This is because "[s]uch rate making throws the burden of such past expense upon different customers who use the service for different purposes than did the customers for whose service the expense was incurred." Id. at 470, 232 S.E.2d at 195.
The Commission, however, based its authority to implement the EMF on the following language contained in G.S. 62-133.2(d), which became effective on 17 June 1982: "The Commission may also consider, but is not bound by, the fuel costs incurred by the utility and the actual recovery under the rate in effect during the test period...." CP & L contends that this provision allows the Commission to rectify, or true-up, differences between actual fuel costs incurred by an electric utility and recoveries for those costs under established rates. The Attorney General and the Public Staff, on the other hand, contend that the provision upon which the Commission relied only enables it to consider actual recovery of fuel costs as one indication of *415 the need for future adjustment, thereby leaving intact the judicial prohibition against retroactive ratemaking.
The rules regarding statutory construction are well established. It is the function of the judiciary to construe a statute when the meaning of the statute is doubtful. Lithium Corp. v. Bessemer City, 261 N.C. 532, 135 S.E.2d 574 (1964). However, judicial construction is controlled by the intent of the General Assembly in enacting the statute. State ex rel. Utilities Commission v. Public Staff, 309 N.C. 195, 306 S.E.2d 435 (1983) (Public Staff). "In seeking to discover this intent, the courts should consider the language of the statute, the spirit of the act, and what the act seeks to accomplish." Stevenson v. City of Durham, 281 N.C. 300, 303, 188 S.E.2d 281, 283 (1972). All statutes dealing with the same subject matter are to be construed in pari materiai.e., in such a way as to give effect, if possible, to all provisions. Jackson v. Guilford County Board of Adjustment, 275 N.C. 155, 166 S.E.2d 78 (1969). Further, where one statute deals with certain subject matter in particular terms and another deals with the same subject matter in more general terms, the particular statute will be viewed as controlling in the particular circumstances absent clear legislative intent to the contrary. Food Stores v. Board of Alcoholic Control, 268 N.C. 624, 151 S.E.2d 582 (1966). It is presumed that, in enacting a law, the legislature acted with full knowledge of prior and existing law. State v. Benton, 276 N.C. 641, 174 S.E.2d 793 (1970). Applying these rules to G.S. 62-133.2(d), we conclude that the statute does not authorize the Commission's use of a true-up system such as the EMF employed in this case.
There is nothing in the legislative history of G.S. 62-133.2 that would indicate the General Assembly's intent to allow true-ups. G.S. 62-133.2, entitled "Fuel charge adjustments for electric utilities," replaced G.S. 62-134(e), which had been enacted in 1975 to provide an expedited, statutory procedure whereby a utility could apply for adjustments in its rates and charges based upon an increase or decrease in the cost of fuel. See Utilities Commission v. Virginia Electric and Power Company, 48 N.C. App. 453, 269 S.E.2d 657, disc. rev. denied, 301 N.C. 531, 273 S.E.2d 462 (1980). However, under G.S. 62-134(e), the Commission was not empowered to consider efficiency of management or how prudently the fuel costs had been incurred; only the actual increase or decrease in cost could be taken into account. Id. This limitation required the Commission, in effect, to automatically pass all fuel costs through to rate-payers without an investigation of the reasonableness of those costs or of the factors causing the change in costs. Nor did G.S. 62-134(e) permit a utility to obtain an adjustment in a fuel cost proceeding for any costs or expenses for purchased power; such costs and expenses were recoverable only in a general rate case. Public Staff, supra.
G.S. 62-133.2 was enacted by the General Assembly in order to eliminate these undesirable limitations which existed under G.S. 62-134(e). The new statute specifically includes the fuel component of purchased power among the fuel rates that may be adjusted. G.S. 62-133.2(a). The statute also requires that the electric utility provide the Commission with specified data from an historic twelve-month test period, G.S. 62-133.2(c), and mandates that the Commission consider that data in reaching its decision. G.S. 62-133.2(d). The statute permits the Commission to consider, in addition to the required data, "the fuel costs incurred by the utility and the actual recovery under the rate in effect during the test period as well as any and all other competent evidence that may assist the Commission in reaching its decision...." Id. The utility bears the "burden of proof as to the correctness and reasonableness of the charge...." Id. Only one adjustment proceeding within a twelve-month period is allowed for each electric utility. G.S. 62-133.2(b).
CP & L asserts that the General Assembly also intended G.S. 62-133.2(d) to allow true-ups for past over-recoveries or under-recoveries *416 of fuel costs. CP & L argues that the legislature must have been aware that most other jurisdictions allow true-ups, and that the portion of G.S. 62-133.2(d) permitting Commission consideration of fuel costs incurred and those actually recovered discloses an intent by the legislature to allow a similar procedure in North Carolina. We find this assertion untenable.
Though we agree with CP & L's contention that the General Assembly was no doubt aware of true-up procedures that existed in other states, such awareness, alone, certainly cannot indicate an actual intent to institute such procedures in this State. At the time G.S. 62-133.2 was enacted, true-up procedures were statutorily authorized in at least nine states and are currently statutorily authorized in thirteen states. See, Conn.Gen.Stat.Ann. § 16-19b(f) (1986); Del.Code Ann. tit. 26, § 303(b) (1986); Ga.Code Ann. § 46-2-26(c), (g) (1982); Ill.Ann.Stat. ch. 1112/3, § 9-220 (Smith-Hurd 1986); Me.Rev.Stat. Ann. tit. 35, § 131(6) (1986); Md.Ann.Code, art. 78 § 54F(e) (1980); Mass.Gen.Laws Ann. ch. 164, § 94G(b) (West 1986); Mich. Comp.Laws Ann. § 460.6j(14)-(15) (West 1986); Nev.Rev.Stat. §§ 704.110(5), 704.185 (1985); Ohio Rev.Code Ann. § 4909.191(E) (Page 1986); 66 Pa.Cons.Stat.Ann. § 1307(e)(3) (Purdon 1979); S.C.Code Ann. § 58-27-865(B) (Law.Co-op.1986); Va.Code § 56-249.6 (1986). An examination of these statutes shows that the language utilized in each of them tends to be much more explicit and direct than that employed by our General Assembly in G.S. 62-133.2(d), often including procedural aspects of true-ups and considerations for determining the proper amount of true-up. For example, South Carolina law provides that:
The Commission shall direct the electrical utilities to account monthly for the differences between the recovery of fuel costs through base rates and the actual fuel costs experienced, by booking the difference to unbilled revenues with a corresponding deferred debit or credit, the balance of which will be included in the projected fuel component of the base rates for the succeeding period. The Commission shall direct the electrical utilities to submit monthly reports of fuel costs, and monthly reports of all scheduled and unscheduled outages of generating units with a capacity of one hundred megawatts or greater.
S.C.Code Ann. § 58-27-865(B) (Law.Co-op. 1986) (emphasis added). Virginia law provides the following:
Recovery of fuel costs.Each electric utility which purchases fuel for the generation of electricity shall submit to the Commission its estimate of fuel costs, including the cost of purchased power, for the twelve-month period beginning on the date prescribed by the Commission. Upon investigation of such estimates and hearings in accordance with law, the Commission shall direct each company to place in effect tariff provisions designed to recover the fuel costs determined by the Commission to be appropriate for that period, adjusted for any over-recovery or under-recovery of fuel costs previously incurred ....
Va.Code § 56-249.6 (1986) (emphasis added).
G.S. 62-133.2, on the other hand, contains no such explicit references to true-ups of over-recoveries or under-recoveries of fuel costs. Rather, the Commission is authorized to "allow electric utilities to charge a uniform increment or decrement as a rider to their rates for changes in the cost of fuel and the fuel component of purchased power used in providing their North Carolina customers with electricity from the cost of fuel and the fuel component of purchased power established in their previous general rate case." G.S. 62-133.2(a). No mention is made of rectifying past over-recoveries or under-recoveries as well. Perhaps more telling is the title of the Act: "An Act to Amend Chapter 62 of the General Statutes to Provide for Utilities Commission Consideration of Annual Fuel Adjustment to Electric Utilities Rates Established Pursuant to G.S. 62-133." 1981 Sess.Laws (Reg.Sess.1982), c. 1197. Again, there is no mention of recouping *417 past over-recoveries or under-recoveries, only of adjustment of established rates. We consider it more probable that if the General Assembly had intended to follow the example of other states in permitting a true-up, it would have done so in the more specific language exemplified in those statutes. Indeed, the fact that the North Carolina statute lacks direct references to over-recoveries and under-recoveries could well be some indication that the General Assembly was aware of practices for true-ups elsewhere and simply rejected the implementation of such practices here. Moreover, the General Assembly must be presumed to have been aware of the judicial prohibition against retroactive ratemaking, State v. Benton, supra; it is doubtful that the General Assembly would have intentionally modified or overruled established judicial decisions without language that made its intent manifest and unambiguous.
In short, to adopt the statutory interpretation offered by CP & L, this Court would have to assume that, because the General Assembly was probably aware of true-up procedures in use in other jurisdictions, it intended to allow similar procedures to be used in this State, without the benefit of any evidence supporting the accuracy of such an assumption. We would further have to assume that the General Assembly authorized such procedures by using vague language, despite the fact that the legislature must be presumed to have known that to do so would overrule or modify the existing decisional law of this State, and despite the fact that almost all other state statutes authorizing true-ups do so much more explicitly. This is more than this Court can or should safely assume.
G.S. 62-133.2(d) provides that "[t]he Commission may also consider, but is not bound by, the fuel costs incurred by the utility and the actual recovery under the rate in effect during the test period...." We believe that the correct interpretation of the foregoing provision is that the Commission is permitted, but not required, to consider actual costs and actual recovery as additional indications of how future fuel costs should be recovered. For example, appreciable differences between actual cost and actual recovery would be some indication that an inadequate formula was utilized in setting the previous fuel charge. This interpretation does not, as CP & L contends, violate the in pari materia rule of construction by simply duplicating what is contained in G.S. 62-133.2(a); G.S. 62-133.2(a) defines what decision the Commission is authorized to make, while G.S. 62-133.2(d) directs how the Commission should reach its decision. This interpretation also avoids the anomaly of allowing true-ups in fuel adjustment cases but not in general rate cases under G.S. 62-133, which even CP & L concedes the legislature could not have intended. CP & L's argument that G.S. 62-133.2(d) modifies G.S. 62-133 in that respect is completely unsupportable. The argument ignores the rule that particular statutes control only in the particular situation addressed, Food Stores v. Board of Alcoholic Control, supra, and indeed seems refuted by G.S. 62-133.2(f), which imposes upon the Commission the obligation to continue to set reasonable rates in general rate cases pursuant to G.S. 62-133.
We recognize that true-ups have been allowed in this State in very limited circumstances. In Utilities Comm. v. CF Industries, Inc., 299 N.C. 504, 263 S.E.2d 559 (1980), the Supreme Court upheld as valid a true-up where, because of the impossibility of estimating future variations in the availability of natural gas, no general fixed rate had been established pursuant to G.S. 62-130. See also, State ex rel. Utilities Comm. v. Thornburg, Atty. Gen., 316 N.C. 238, 342 S.E.2d 28 (1986). Both of these cases involved provisional, non-fixed rates which were adjusted at later hearings. G.S. 62-133.2(d) does not extend this use of true-ups to fuel cost adjustment proceedings because G.S. 62-133.2 only provides for a rider to final rates set pursuant to G.S. 62-133. G.S. 62-133.2(a), (f). Thus, the use of true-ups is still limited to the provisional rate cases in which they have previously been allowed.
*418 In summary, we hold that G.S. 62-133.2 was not intended by the General Assembly to authorize true-ups for past over-recoveries or under-recoveries of fuel costs or the fuel component of purchased power of electric utilities. The Commission, therefore, exceeded its statutory authority in implementing the EMF. Accordingly, the Commission's Order is vacated and remanded for proper calculation of fuel cost adjustments in a manner not inconsistent with this opinion. In view of our holding, we need not address the Public Staff's contention that the EMF adopted by the Commission in this case was arbitrary and capricious.
Vacated and remanded.
COZORT and ORR, JJ., concur.