**IDAHO POWER COMPANY, Petitioner,**

v.

**FEDERAL POWER COMMISSION, Respondent.**

No. 19637.

United States Court of Appeals Ninth Circuit.

June 4, 1965.

Rehearing Denied July 8, 1965.

A. C. Inman, James E. Bruce, Boise, Idaho, R. P. Parry, John H. Daly, Parry, Robertson & Daly, Twin Falls, Idaho, for petitioner.

Richard A. Solomon, Gen. Counsel, Howard E. Wahrenbrock, Sol., Joseph B. Hobbs, Josephine H. Kline, Attys., Washington, D. C., for respondent F.P.C.

J. Edward Williams, Acting Asst. Atty. Gen., Roger P. Marquis, Edmund B. Clark, Attys., Dept. of Justice, Washington, D. C., Frank J. Barry, Sol., Edw. Weinberg, Deputy Sol., Harry J. Hogan, Associate Sol., Ernest J. London, Atty., all with Dept. of Interior, Washington, D. C., Geo. D. Dysart, Asst. Reg. Sol., Dept. of Interior, Portland, Or., for amicus curiae U.S.A.

Before HAMLEY, MERRILL and BROWNING, Circuit Judges.

MERRILL, Circuit Judge:

These are proceedings to review an order of the Federal Power Commission in connection with the licensing of hydroelectric project works on the Snake River, Idaho, under § 4(e) of the Federal Power Act, 49 Stat. 840 (1935), 16 U.S.C. § 797(e) (1958).

Petitioner sought authority to construct two additional transmission lines in connection with its already licensed project. Authority was granted, provided that petitioner make surplus capacity of the project's transmission facilities available to the Government for the wheeling [1] of Government power at Government expense. On this review petitioner challenges the authority of the Commission to impose such a condition, and seeks to have it declared invalid.

On August 4, 1955, the Commission issued petitioner a fifty-year license under the Federal Power Act, supra, for a hydroelectric project to consist of three power developments located on that portion of the Snake River which forms the boundary between Oregon and Idaho. The license followed hearings on three separate applications by petitioner for the Oxbow, Hell's Canyon and Brownlee developments, which had been consolidated for hearing. The license applications contain specifications for the proposed project work, including the proposed primary transmission lines.

The applications were vigorously opposed on the ground that the resources should be reserved for public development by the United States. There being no formulated or contemplated plans for Federal development at that time, the Commission granted petitioner's appli-

---

1. "Wheeling" is the transmission of one company's power over another company's system.

cation and the Court of Appeals for the District of Columbia sustained the Commission's action. National Hells Canyon Ass'n v. F. P. C., 99 U.S.App.D.C. 149, 237 F.2d 777 (1956), cert. denied, 353 U.S. 924, 77 S.Ct. 681, 1 L.Ed.2d 720 (1957).

The license provides that the three developments shall be considered as units of one complete project. It specifically lists the individual project works licensed as part of the project. No transmission facilities were then specified. Instead, by Article 45 of the license, it was provided:

> "The Commission expressly reserves the right to determine at a later date the question of what transmission lines and appurtenant facilities, if any, shall be covered in this license and included as part of the project works."

Since the project was to occupy public lands, petitioner was required by Article 44 to:

> " * * * pay to the United States such charges as may be specified hereafter for the purpose of recompensing the United States for the use, occupancy and enjoyment of its lands, including transmission right-of-way."

Thereafter, at petitioner's request, the license was amended several times to include transmission lines within the project license. No wheeling conditions were imposed in any of these orders.

In September, 1963, petitioner requested amendment of the license to include two 230,000-volt circuits extending a distance of about 100 miles, 27 miles of which were through Government land, and 1.75 miles within the Boise and Payette National Forests. The Commission advised the Secretaries of Agriculture and the Interior of the application, and requested their views.

The Secretary of the Interior recommended that any authorization for construction of the lines should be conditioned upon the Commission's reserving the right to require petitioner to wheel Government power over the company's entire main transmission system. He explained that this might enable the Government to defer construction by the Bonneville Power Administration of a high-capacity line connecting the main Federal Columbia River Power System to the Upper Snake River System; that Bureau of Reclamation plants in Southern Idaho would shortly be unable to meet their power requirements and would need a part of Bonneville's surplus.

The Secretary of Agriculture also recommended a wheeling condition, stating that this would "minimize the use of public lands for transmission line rights of way" and thus "contribute greatly to the objective of 'assuring an abundant supply of electric energy throughout the United States with the greatest possible economy and with regard to the proper utilization and conservation of natural resources.' Federal Power Act, § 202 (a) [49 Stat. 848 (1935), 16 U.S.C. 824a (a)]."

On July 24, 1954, by amendment No. 9 to the license, the Commission granted the requested authority for the construction of the lines, subject to the condition that petitioner make available to the Government on a reasonable cost basis, all surplus transmission capacity within the primary lines of the project, and, upon appropriate request and at least one year's notice, increase the transmission capacity of the project transmission lines at the Government's expense. Under the license conditions, the Government's wheeling is limited to "such amounts as will not unreasonably interfere with the Licensee's use of said lines," and to transmission "only to consuming facilities of the United States and to public bodies and co-operatives entitled to statutory preference in connection with the distribution and sale of electric energy by the United States."

Petitioner, with the Commission's consent, filed an acceptance of the amendment, reserving the right "to object, upon timely court review of the Commis-

sion's order, to the lawfulness of the wheeling condition."

The lawfulness of that condition is thus the issue here presented.

The propriety and reasonableness of such a license condition is established by F.P.C. v. Idaho Power Co., 344 U.S. 17, 73 S.Ct. 85, 97 L.Ed. 15 (1952). In that case the power company applied for a license for a project which included, *inter alia*, two transmission lines. The FPC authorized the project but imposed the condition that the licensee permit the United States to connect with the transmission facilities and transfer power generated at its own plants over the licensee's lines. In discussing Part I of the Federal Power Act, the Court stated:

"Under these sections the Commission is plainly made the guardian of the public domain. The requirement that existing lines be fully utilized before additional lines are authorized would seem to be relevant to a decision under § 10 (a) that the project submitted was consonant with the 'comprehensive plan' for the waterway. And the Commission might well determine under § 4(g) that if public lands are to be used for the transmission of power, conservation of the 'water-power resources of the region' requires that public power as well as private power be transmitted over them.

Sections 4 and 10 speak specifically of the public domain—waterways and public lands. Section 6 makes each license subject to all the terms and conditions of the Act and to 'such further conditions, if any, as the Commission shall prescribe in conformity with this Act * * *.' Section 6, read in the context of §§ 4 and 10, would seem to give ample authority to the Commission to attach the conditions imposed here. Protection of the public domain, conservation of waterpower resources, development of comprehensive plans for the waterways—each of these might on the facts of a case be sufficient to authorize the grant of permission to a public utility company to use the public domain provided it agreed to use its excess capacity to transmit government power."

Petitioner seeks to distinguish that case upon the ground that there the condition attached to the license as originally issued. Here, it is asserted, the license issued included and contemplated the construction of necessary transmission lines. The future licensing of transmission lines was not reserved, it is asserted; what was reserved was only the right "to determine at a later date" what transmission lines "shall be covered in this license and included as part of the project works." Our attention is directed to § 6 of the Federal Power Act, 49 Stat. 841 (1935), 16 U.S.C. § 799 (1958), providing that "Licenses may be altered * * * only upon mutual agreement between the licensee and the Commission * * *."

Petitioner contends that the license as issued must be construed to include such transmission lines as are necessary, since anything less would leave the project incomplete; that the imposition of the wheeling condition amounts to an "alteration" of the license, or to a refusal to do that which is essential to its completion unless petitioner submits to an alteration. This, petitioner contends, is alteration of the license by duress and not by agreement.

We cannot agree.

 These transmission lines are not, as petitioner argues, included within the license; they have been expressly withheld. No agreement has been reached as to them. If they are to be included the license must be amended to include them. Reasonable conditions can be attached to an amendment of the license, Montana Power Co. v. F.P.C., 112 U.S. App.D.C. 7, 298 F.2d 335 (1962), as well as to its original issuance, Federal Power Act § 204, 49 Stat. 841 (1935), 16 U.S.C. § 799 (1958), and the reservation of a licensing of transmission lines reserves the

right to attach reasonable conditions to the amendment by which they are licensed. If such conditions relate to the subject of the amendment, they then relate to that upon which agreement has been withheld, and do not constitute an "alteration" of that which had already been agreed upon.

 The fact that the wheeling requirement attaches to already licensed transmission lines, as well as to those approved by the amendment, does not render the requirement to that extent unrelated to and an unreasonable condition of the amendment. The Commission as "guardian of the public domain" has simply and reasonably required "that existing lines be fully utilized before additional lines are authorized." F.P.C. v. Idaho Power Co., 344 U.S. 17, 23, 73 S.Ct. 85, 88, 97 L.Ed. 15 (1952).

The order of the Commission is affirmed.