STATE OF NORTH CAROLINA EX REL. UTILITIES COMMISSION; RUFUS L. ED-MISTEN, ATTORNEY GENERAL; PUBLIC STAFF; HENRY J. TRUETT; SWAIN COUNTY BOARD OF COUNTY COMMISSIONERS; CHEROKEE, GRAHAM AND JACKSON COUNTIES; TOWNS OF ANDREWS, BRYSON CITY, DILLSBORO, ROBBINSVILLE, AND SYLVA; AND THE TRIBAL COUNCIL OF THE EASTERN BAND OF CHEROKEE INDIANS; DEROL CRISP v. NANTAHALA POWER AND LIGHT COMPANY; ALUMINUM COMPANY OF AMERICA; AND TAPOCO, INC.

No. 111A84

(Filed 13 August 1985)

1. **Utilities Commission § 55— judicial review of findings by Utilities Commission**

An appellate court will not disturb the findings of fact of the Utilities Commission as long as, upon an examination of the whole record, they are supported by competent, material, and substantial evidence. G.S. 62-94.

2. **Utilities Commission § 49— electric rate case—consideration of testimony in prior proceeding**

The Utilities Commission did not err in considering the testimony of a witness in a prior proceeding where Alcoa and Tapoco, in response to a motion to join them as parties in the present proceeding, incorporated by reference the testimonies and briefs filed with the Commission in the prior proceeding.

3. **Electricity § 3; Utilities Commission § 56— similarly worded findings in two proceedings**

The fact that five of the findings of fact in the present proceeding and in a prior proceeding to determine Nantahala's retail rates are similarly worded does not indicate that the Utilities Commission did not consider evidence presented before it in the present proceeding where the issues addressed in the findings were the same in the two proceedings and the Commission resolved them consistently.

4. **Electricity § 3; Utilities Commission § 36— electric rates of Nantahala—hidden benefits to Alcoa**

The record supported a finding by the Utilities Commission that Alcoa was the recipient of hidden benefits arising out of certain wholesale power transactions and agreements between and among Nantahala, Tapoco, Alcoa and TVA.

5. **Electricity § 3; Utilities Commission § 36— integration of facilities of Nantahala and Tapoco**

The record supported findings by the Utilities Commission that (a) Nantahala has not been designed, developed, or operated as a stand-alone electric system, (b) the Nantahala and Tapoco electric facilities constitute a single integrated electric system, and (c) the two corporate affiliates should be treated as a single utility system for rate making purposes.

6. **Electricity § 3; Utilities Commission § 36— electric rates—liability of Alcoa for Nantahala's refunds**

Contrary to the contention of Nantahala, the Utilities Commission's order does require Alcoa as Nantahala's parent to pay refunds which Nantahala is unable to make.

7. **Electricity § 3; Utilities Commission § 36— electric rates—finding that Tapoco does not wheel power purchased by Alcoa**

The evidence supported findings by the Utilities Commission that Tapoco does not wheel power Alcoa purchases from TVA to serve Alcoa in Tennessee, that even if Tapoco did wheel this power, it was not integrated within the combined Tapoco-Nantahala system with respect to the public load served by these utilities, and that the costs associated with this purchased power thus should not be "rolled in" when determining Nantahala's retail rate base.

8. **Electricity § 3; Utilities Commission § 36— electric rates—roll-in methodology**

The Utilities Commission did not err in using a roll-in methodology for determining Nantahala's costs which considered the actual Nantahala-Tapoco combined system capabilities rather than the way in which Nantahala and Tapoco share entitlements under certain interstate wholesale power agreements between and among Nantahala, Tapoco, Alcoa and TVA.

ON appeal by respondents from the decision of the Court of Appeals reported at 66 N.C. App. 546, 311 S.E. 2d 619 (1984), affirming orders entered 8 June 1982, 12 August 1982, and 1 September 1982 by the North Carolina Utilities Commission in Docket No. E-13, Sub 35. Heard in the Supreme Court 10 September 1984.

This litigation began on 31 December 1980 when Nantahala Power and Light Company (Nantahala) applied to the North Carolina Utilities Commission for authority to adjust and increase its retail electric rates and charges and to place into effect a revised Purchased Power Cost Adjustment Clause applicable to all retail electric rates. The rates and charges proposed by Nantahala were based on a test period ending 31 December 1979 and were proposed to become effective for service rendered on and after 1 February 1981. On 16 July 1981 the Commission joined Aluminum Company of America (Alcoa) and Tapoco, Inc. as parties to the proceeding. Adjudicatory hearings in this general rate case began in September 1981, and on 8 June 1982 the Commission entered an order increasing rates to some extent and requiring a refund of monies that Nantahala had overcharged its retail ratepayers. Alcoa was ordered to make the refunds to the extent that Nantahala is unable to do so. Respondents appealed, and the Court of

Appeals affirmed. Respondents appealed to this Court pursuant to N.C.G.S. 7A-30(3).

*Rufus L. Edmisten, Attorney General, by Richard L. Griffin, Assistant Attorney General, for the Using and Consuming Public.*

*Robert Gruber, Executive Director, The Public Staff, by James D. Little, Staff Attorney, for the Using and Consuming Public.*

*Joseph A. Pachnowski for the County of Swain and the Town of Bryson City.*

*Crisp, Davis, Schwentker & Page, by William T. Crisp and Robert B. Schwentker, for Henry J. Truett, Counties of Cherokee, Graham, Swain, Jackson, Towns of Andrews, Dillsboro, Robbinsville, Bryson City, Sylva, and the Tribal Council of the Eastern Band of the Cherokee Indians.*

*Western North Carolina Legal Services, Indian Law Unit, by Larry Nestler, for Derol Crisp.*

*Hunton & Williams, by Edward S. Finley, Jr., for Nantahala Power and Light Company.*

*LeBoeuf, Lamb, Leiby & MacRae, by Ronald D. Jones and David R. Poe, for Aluminum Company of America and Tapoco, Inc.*

MARTIN, Justice.

A number of questions of law at issue in this case have been resolved by this Court's recent opinion in *State ex rel. Utilities Commission v. Nantahala Power and Light Company*, 313 N.C. 614, 332 S.E. 2d 397 (1985) (Nantahala Sub 29 (Remanded)). We therefore refer to that opinion for an explanation of the following holdings which apply equally to the instant case: (1) Tapoco and Alcoa are North Carolina public utilities subject to the Commission's regulatory authority and jurisdiction;[1] (2) utilization of a roll-in theory does not violate the Federal

---

1. We reject Tapoco's argument that the Commission erroneously involuntarily joined Tapoco as a party to these proceedings. Rule 19 of the North Carolina Rules of Civil Procedure provides in part:

State ex rel. Utilities Comm. v. Nantahala Power & Light Co.

Power Act or the supremacy clause or the commerce clause of the Constitution of the United States; (3) application of a roll-in methodology such as is used in this case does not impermissibly impair Nantahala's ability to earn a proper rate of return on its investment and does not amount to a confiscation of its properties; (4) prior federal and state regulation of Nantahala, Tapoco, and Alcoa and various transactions and the power supply agreements affecting Nantahala's power supply do not prohibit or preempt the Commission from piercing the corporate veil between Alcoa and Nantahala; (5) the Commission acted within its regulatory authority in imposing an obligation upon Alcoa to pay any part of the refund obligation arising from reduction in retail rates that Nantahala is financially unable to make, and this obligation does not amount to a confiscation of Alcoa's property.

[1]   With the aforesaid issues already resolved as a matter of law, we now turn to those issues peculiar to this proceeding. We begin with Alcoa's and Nantahala's contentions that certain of the Commission's findings of fact are not supported by evidence of record. It is well established that an appellate court will not disturb the findings of fact of the Utilities Commission as long as, upon an examination of the whole record, they are supported by competent, material, and substantial evidence. N.C. Gen. Stat.

---

"Rule 19 Necessary joinder of parties

"(a) Necessary joinder. Subject to the provisions of Rule 23, those who are united in interest must be joined as plaintiffs or defendants; but if the consent of anyone who should have been joined as plaintiff cannot be obtained he may be made a defendant, the reason therefor being stated in the complaint; provided, however, in all cases of joint contracts, a claim may be asserted against all or any number of the persons making such contracts.

"(b) Joinder of parties not united in interest. The court may determine any claim before it when it can do so without prejudice to the rights of any party or to the rights of others not before the court; *but when a complete determination of such claim cannot be made without the presence of other parties, the court shall order such other parties summoned to appear in the action.*" (Emphasis added.)

*See Strickland v. Hughes,* 273 N.C. 481, 160 S.E. 2d 313 (1968) (decided under former N.C.G.S. 1-73); *Moore v. Massengill,* 227 N.C. 244, 41 S.E. 2d 655 (1947) (same). *See generally* W. Shuford *N.C. Civil Practice and Procedure* § 19-4 (1981). The decision whether to order joinder of proper parties rests within the sound discretion of the Utilities Commission in its authority as an adjudicatory body. N.C. Gen. Stat. § 62-60 (1982). Tapoco has failed to establish that the Commission abused its discretion in ordering Tapoco joined as a party in the instant proceedings.

§ 62-94 (1982); *State ex rel. Utilities Commission v. Public Staff*, 309 N.C. 195, 306 S.E. 2d 435 (1983); *State ex rel. Utilities Comm. v. Southern Bell*, 307 N.C. 541, 299 S.E. 2d 763 (1983).

Preliminarily, we address Alcoa's contention that although the Commission stated in its 13 March 1981 ruling that it would determine whether roll-in is appropriate in Sub 35 independently and irrespective of whether such a determination is required in Docket No. E-13, Sub 29, certain parts of the Commission's 8 June 1982 order clearly show that the Commission in effect merely adopted its Sub 29 (Remanded) order for the purpose of determining the outcome of this proceeding instead of making independent findings and conclusions. Alcoa points out, for example, that the June 8 order refers to a "witness Popovich" who testified during the Sub 29 proceedings but not during the proceedings in the instant case. In addition, Alcoa contends that findings of fact 4, 5, 6, 17, and 20 of the June 8 order are so similar to findings of fact 4, 5, 6, 19, and 21 of the Sub 29 (Remanded) order that it is clear that the two orders are "essentially identical."

[2] We might be impressed by the agility of Alcoa's legal stratagems but for its occasional opacity. It is true that witness Popovich testified during proceedings in Sub 29; however, in the "Response on Behalf of Aluminum Company of America and Tapoco, Inc. to Motion to Join Alcoa and Tapoco as Parties" filed in Sub 35 on 6 February 1981, we find the statement that "Tapoco and Alcoa hereby incorporate by reference the testimonies and briefs filed with this Commission in Docket No. E-13, Sub 29."[2] As Alcoa presented the Commission with the opportunity to consider witness Popovich's testimony in the instant case, it is curious that Alcoa is now trying to argue that the Commission erroneously did so.

[3] Further, the fact that five of the findings of fact in the two proceedings are similarly worded does not indicate that the Commission did not consider evidence presented before it in the proceedings in the instant case. The issues addressed in the findings to which Alcoa refers us arose in both the Sub 29 (Remanded) and the Sub 35 cases, and because the Commission resolved them con-

---

2. In the instant case Nantahala, too, incorporates by reference part of its brief to this Court in the Sub 29 (Remanded) appeal.

sistently, it is not particularly strange that its findings are similarly worded.[3] There is no error with respect to this aspect of the Commission's order in the present case, and we hold that Alcoa's rights to due process were not violated by the manner in which the Commission proceeded.

We now address Alcoa's contention that several of the Commission's findings of fact are unsupported by evidence of record and that the roll-in theory the Commission used in the present case was inappropriate because based on the erroneous findings of fact. Alcoa alleges that the following six points were not supported by evidence of record:

(1) that testimony of witness Popovich was properly before the Commission in this proceeding;

(2) that Tapoco does not wheel power Alcoa purchases from the Tennessee Valley Authority (TVA) to serve Alcoa in Tennessee;

(3) the Commission's decisions to include in the roll-in calculations power Nantahala purchased from TVA to serve Nantahala's North Carolina load but to exclude power Alcoa purchased from TVA to serve Alcoa's Tennessee load;

(4) the Commission's calculation of "hidden benefits" to Alcoa arising out of the Original Fontana Agreement, the New Fontana Agreement, and the Apportionment Agreement;

(5) the Commission's determination of the appropriateness of piercing the corporate veil between Alcoa and Nantahala;

(6) that the Nantahala and Tapoco facilities are integrated and coordinated with one another and therefore rolling their costs together was appropriate.

We have discussed and disposed of the first contention earlier in this opinion. The fifth point is governed by our conclusions to the

---

3. We note that the New Fontana Agreement and the 1971 Apportionment Agreement were still in effect during the test period in which rates were based in the instant case.

contrary in Nantahala Sub 29 (Remanded). Thus, we now turn to the remaining contentions.

[4] Because it concerns the question of whether a roll-in is appropriate to any extent, we address the fourth point first. Alcoa argues that the record does not support the Commission's finding that Alcoa received concealed benefits and therefore it is inappropriate to use any form of roll-in to rectify past inequities. The basis of Alcoa's argument is that "[t]he calculation of 'hidden benefits' that the Commission used to justify the imposition of rolled-in rate making in the first place (see R pp 183-208), was repudiated by the only witness to offer testimony as to the existence of hidden benefits." Upon an examination of the transcript, we do not find the direct repudiation alleged by Alcoa. In addition, there is ample evidence in the form of exhibits justifying the Commission's determination that Alcoa was the recipient of hidden benefits. We cannot agree with this assignment of error.

[5] Alcoa also contends that evidence placed before the Commission during the proceedings in this case contradicted evidence which was before the Commission in the Sub 29 (Remanded) case concerning the physical integration of the Tapoco-Nantahala system. Therefore, the Commission's determination that the system is physically integrated is erroneous, and because this factual predicate to the use of roll-in has not been established, the use of any roll-in methodology was also error. We again disagree. Although respondents did introduce additional evidence concerning this issue during proceedings in the instant case, we find that the record amply supports the Commission's findings that (a) Nantahala has not been designed, developed, or operated as a standalone electric system, (b) the Nantahala and Tapoco electric facilities constitute a single integrated electric system, and (c) the two corporate affiliates should be treated as a single utility system for rate making purposes in view of their historical development, actual operating conditions, and the fact that Nantahala's customer cost responsibility cannot be accurately determined using a "stand-alone" model. The Commission properly determined that a roll-in methodology for rate making in this case was appropriate. The assignment of error is meritless.

[6] We also reject Nantahala's contention that the Commission's 8 June 1982 order is deficient as a matter of law because although

it sets retail electric rates prospectively and anticipates that Nantahala may not be able financially to pay refunds anticipated because of rate reductions, it does not require Alcoa as Nantahala's parent to pay refunds which Nantahala is unable to make. To the contrary, the Commission's finding of fact 20 states in part that "to the extent Nantahala is financially unable to make the revenue refunds required in this Order, Alcoa shall refund all or any portion of the aforementioned revenue refunds that Nantahala is financially unable to make." Earlier findings of fact in the order specify that refunds are required for rate reductions provided for in this rate case. At the end of the order the Commission further states: "IT IS, THEREFORE, ORDERED as follows: . . . 7. That, to the extent Nantahala is financially unable to make revenue refunds required under Ordering Paragraph No. 3 above, Alcoa shall refund all or any portion of the aforementioned revenue refunds that Nantahala is financially unable to make." Nantahala's assignment of error is meritless.

[7]  We now turn to the issue of whether Tapoco wheels to Alcoa power which Alcoa owns. In its 8 June 1982 order the Commission found as a fact that Tapoco does not wheel certain power which Alcoa buys directly from TVA for Alcoa's sole use for its industrial plant operations in Tennessee. The Commission further reasoned that, assuming for purposes of argument that Tapoco did wheel this power, such power was not integrated within the combined Tapoco-Nantahala system. For both of these reasons the Commission declined to "roll-in" the costs associated with this purchased power when determining Nantahala's retail rate base. The Commission also concurred with the intervenors' contention that "should the separate $52 million of Alcoa purchases directly from TVA be rolled into the total power purchases of the Nantahala-Tapoco unified system, those purchases should be allocated entirely to Alcoa."

Alcoa argues that the Commission's findings were erroneous because all of the evidence shows that Tapoco does in fact wheel the power Alcoa purchases from TVA and therefore, because this power traversed the Tapoco-Nantahala system, its costs should have been rolled into the Commission's calculations.

As the Commission noted, "wheeling" is a term used to denote the transmission of one utility's power over another utili-

ty's system. *See Town of Norwood v. Fed. Energy Reg. Com'n,* 587 F. 2d 1306, 1307 n.2 (1978); *Utah Power and Light Company v. Morton,* 504 F. 2d 728 (1974); *Idaho Power Company v. Federal Power Commission,* 346 F. 2d 956, 957 n.1 (1965). Although evidence in the record conflicts as to whether Tapoco wheels power to Alcoa, the Commission's determination that Tapoco does not wheel is supported by competent, material, and substantial evidence and therefore we do not disturb it. A key exhibit in this regard is a contract identified by Alcoa's witness H. J. Vander Veen as the FERC Rate Schedule which governs the alleged wheeling agreement. This contract which became effective in 1968 and continues until 1 March 2005, states in part:

> It is desirable to reduce to writing the arrangement between Tapoco, Inc. (Tapoco) and Aluminum Company of America (Alcoa) under which power delivered to Alcoa (from Tapoco and other sources) is transformed and switched at the high voltage substation facilities of Tapoco, located adjacent to the Alcoa, Tennessee works of Alcoa. Accordingly it is proposed that we agree as follows:
>
> (a) At the substation facilities mentioned above, Tapoco will perform such necessary transformation and switching of power delivered to Alcoa as Alcoa shall direct. . . .

The language in these paragraphs indicates that the contract governs merely the transformation and switching of Alcoa's power at substations adjacent to Alcoa plants. This substation facilities contract does not concern or address the transmission of power over Tapoco lines denoted by the term "wheeling." We find the Commission's determination that Tapoco does not wheel Alcoa's power to be supported by material and substantial evidence of record and therefore do not disturb it.

We note, however, that the Commission properly determined that even if Tapoco does, arguendo, wheel power which Alcoa purchases from TVA for use at Alcoa's Tennessee plants, the costs associated with such purchases should not be considered as a component of the roll-in methodology. As the Commission observed, no showing was made that this power was integrated within the Tapoco-Nantahala system with respect to the public load served by these utilities. As this Court stated in *Nantahala Sub 29 (Remanded),* 313 N.C. at 678, 332 S.E. 2d at 435, "the Commission

accepted that the non-utility direct industrial purchases that Alcoa makes from TVA are not properly considered a *utility* function of either Tapoco, Nantahala or the combined utility system of both and so are not properly includable in the cost of service allocation." We agree with the Commission's reasoning on this point and find it to be equally applicable to the present case. Therefore costs associated with such purchases were also properly excluded in the roll-in calculations performed by the Commission in the instant case.

[8]   We now turn to other findings that respondents contend are not supported by evidence of record. Both Alcoa and Nantahala allege that the commission made several mathematical errors when using the roll-in technique. Specifically, they argue that the Commission's attributions of capacity to Nantahala and Tapoco individually were erroneous and therefore the roll-in methodology using such figures resulted in erroneous computations. The basis for these alleged errors is the fact that instead of adopting the roll-in methodology proposed by respondents' witnesses, a methodology which would have determined the utilities' capacities based on return entitlements set forth in the New Fontana Agreement, the Commission adopted the intervenors' methodology. Under the latter, Nantahala's costs were determined by a consideration of actual combined system capabilities, not by the way in which Nantahala and Tapoco share in the New Fontana Agreement entitlements (as determined by the 1971 Apportionment Agreement). We hold that the Commission did not err in using the roll-in methodology proposed by the intervenors; therefore the Commission did not err by using the capacity assignments which it did. As we stated in *Nantahala Sub 29 (Remanded)*, 313 N.C. at 683, 332 S.E. 2d at 438.

> The roll-in technique chosen by the Commission is fully supported by substantial evidence of record and is a determination which essentially rests within the discretion of the Commission in the exercise of its rate making function. As the United States Supreme Court has observed in reviewing a similar regulatory question, "judgment and discretion control both the separation of property and the allocation of costs when it is sought to reduce to its component parts a [utility] business which functions as an integrated whole."

*Colorado Interstate Gas Co. v. FPC*, 324 U.S. at 591, 89 L.Ed. at 1217.

The Commission did not abuse its discretion in adopting the roll-in methodology which it did, and within this methodology its calculations of capacity were not erroneous. Therefore we reject respondents' arguments concerning these issues.

Alcoa goes on to argue that the Commission ignored certain evidence placed before it with respect to an alternative roll-in methodology proposed by John C. Romano, an engineer with the Public Staff.[4] There is no evidence that the Commission ignored this study when deciding which roll-in methodology would be appropriate in this proceeding. As we held earlier, the Commission did not abuse its discretion in employing the particular methodology which it did. We hold that all parties received a full and fair hearing during the proceedings in this case. Respondents' assignment of error is meritless.

The foregoing issues are determinative of this appeal. We hold that there is no merit to any of respondents' assignments of error. Therefore we affirm the decision of the Court of Appeals.

Affirmed.

---

· 4. It is Nantahala's position that the Commission properly rejected Romano's proposed roll-in because of flaws in its methodology.